PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LINDA LOUGHRIDGE; WILLIAM P. LOUGHRIDGE; JERRY HANNAH; NANCY HANNAH; DONNA L. GARTH; RONALD HOCHFIELD; MARSHA HOCHFIELD; BALAJU, LLC, a Colorado limited liability company; DALE V. KESLER; JUDITH A. KESLER; ROSEMARIE GLAS; CHRISTOPHER W. CONGALTON; SUSAN T. CONGALTON; CLAIRE BECK; CALVIN DAKS; CAROL DAKS; JUSTINE PARKER; HOWARD G. PARKER; JANET SUTTERLEY; RANDY KILGORE; SUE TAYLOR; DARRELL TAYLOR; JANET G. UPTON; CHARLES R. UPTON; ROBERT B. GROSSMAN; GALE K. GROSSMAN; MARK A. LATHROP; SUSAN K. LATHROP; JANICE C. MEYER; GARY Q. BARNETT; JULIA WATSON BARNETT; ROBERT S. JULIAN; COREY BENDER MINDLIN; ADDISON L. PIPER; RICHARD C. RACZUK; CLAUDETTE L. RACZUK; THOMAS A. HARDILEK; SANDRA J. HARDILEK; FUYU FARMS, a Colorado general partnership; DONALD K. HAGAR; LEILA M. HAGAR; DONALD M. JOHNSON; TERESA Y. JOHNSON; STEVE SHUMAN; KAREN SHUMAN; DAVID PRICE; MARY

Nos. 04-1261 & 04-1263

PRICE; TIM BORDEN; JANET BORDEN; JOHN W. PAUL; LINDA T. PAUL; MARCUS MEYER; KARRIE MEYER; JAMES C. HOLZWARTH; NIKI K. HOLZWARTH; MARTHA W. HIBBARD; ROBERT C. COMYN; NOELLE L. COMYN; KIEFER MENDENHALL; MARY MENDENHALL; WILLIAM F. GOROG, on behalf of the GRANTOR RETAINED INCOME TRUST,

       Plaintiffs - Appellants/
       Cross - Appellees,

v.

CHILES POWER SUPPLY COMPANY, INC., doing business as Heatway Radiant Floors and Snowmelting,

       Defendant- Cross-Claimant - Appellee,

v.

GOODYEAR TIRE & RUBBER COMPANY, an Ohio Corporation,

       Defendant - Cross - Defendant - Appellee/
       Cross - Appellant.

-2-

Stephen G. Masciocchi, Holland & Hart LLP, Denver, Colorado, (David L. Black, Holland & Hart LLP, Denver, Colorado, William W. Maywhort and J. Lee Gray, Holland & Hart LLP, Greenwood Village, Colorado, Geoffrey P. Anderson, Burns, Figa & Will P.C., Englewood, Colorado, Rohn K. Robbins, Law Offices of Rohn K. Robbins LLC, Vail, Colorado, with him on the briefs) for Plaintiffs-Appellants/Cross-Appellees.

Roger P. Thomasch, Ballard, Spahr, Andrews & Ingersoll, LLP, Denver, Colorado, (Mary A. Wells and L. Michael Brooks, Jr., Wells, Anderson & Race LLC, Denver, Colorado, David L. Lenyo and Chad Schmit, Garfield & Hecht, P.C., Aspen, Colorado, with him on the briefs for Appellee/Cross-Appellant Goodyear Tire and Rubber Company, and Wendelyn K. Walberg and Lynaia M. South, Walberg, Dagner & Tucker, P.C., Centennial, Colorado, on the brief for Appellee Chiles Power Supply Company) for Appellee/Cross-Appellant Good Year Tire and Rubber Company.

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge and, **KELLY** Circuit Judge.

**KELLY**, Circuit Judge.

This appeal and cross-appeal arise from a diversity action brought under Colorado state law by the owners of 36 Colorado homes ("Homeowners") against Defendants Chiles Power Supply, Inc. d/b/a Heatway Radiant Floors and Snowmelting ("Heatway") and Goodyear Tire and Rubber Company ("Goodyear"). After a jury trial and post-trial motions, many, but not all, of the

Homeowners were awarded damages against Goodyear only. We affirm the district court's amended judgment in part, reverse in part, and remand.

Background

In the 1980s, Heatway began selling parts for hydronic radiant heating systems. These systems use hose to circulate warm fluid under indoor flooring as an alternative to conventional heating systems, or under driveways and sidewalks to melt snow and ice. Heatway originally contracted with Dayco Rubber Products Company ("Dayco") to produce the hose, "Entran," used in Heatway's radiant systems. In 1989, Heatway contracted with Goodyear to manufacture a new hose, "Entran II." By 1990, Heatway discontinued Dayco as a supplier and thereafter used Goodyear as its sole supplier of hose. Goodyear made Entran II until 1993 and supplied it exclusively to Heatway.

As early as 1991, some homeowners began noticing problems with their hydronic heating systems, including cracking, leaking and sediment build-up in their Entran II hose. In many cases, these problems required the removal and replacement of the hose in its entirety, as well as the replacement of most other parts of the hydronic heating system. By 1992, Heatway began receiving complaints from homeowners about hardening of the Entran II hose and leaks in the installed heating systems. Believing that the Entran II hose was causing the

leaks, Heatway stopped paying Goodyear for hose shipments. As a result, Goodyear sued Heatway in 1997 in federal district court in Ohio (the "Ohio action"). Heatway filed a counterclaim alleging that the Entran II hose was defective. Goodyear had by this time manufactured 25,000,000 feet of Entran II hose. The Ohio action went to trial on the issue of the merchantability of all 25,000,000 feet of Entran II hose. The jury returned a verdict for Goodyear, whereupon Heatway declared bankruptcy.

Between 1998 and 2000 a number of suits were filed in Colorado state and federal courts by homeowners against Goodyear, Heatway, or both. Eight of these cases were consolidated. Homeowners sought recovery from Goodyear for sale of a defective product, negligence, negligent failure to warn, violation of the Colorado Consumer Protection Act ("CCPA"), and civil conspiracy. Homeowners claimed that Goodyear was liable for the costs of removing and replacing the Entran II hose installed in their homes, the diminution in value of their homes, and other costs and losses. Four homeowners –Rosemarie Glas, Robert Julian, Corey Bender Mindlin, and Jane and Charles Upton (the "Heatway plaintiffs") – also sought recovery against Heatway for violation of the CCPA and civil conspiracy. Goodyear and Heatway asserted cross-claims against one another for contribution or indemnification under Ohio law. Goodyear cross-claimed against Heatway for deceit (fraud), and Heatway cross-claimed against Goodyear for sale

of a defective product.

After the close of evidence, Goodyear moved, pursuant to Fed. R. Civ. P. 50(a), for judgment as a matter of law as to the claims of three homeowners who sold their homes prior to trial: James and Nikki Holzwarth (the "Holzwarths"), Janet Sutterley and Randy Kilgore ("Sutterley/Kilgore"), and Ms. Glas. The district court denied Goodyear's motion as to the claims of the Holzwarths and Sutterley/Kilgore. However, the district court granted the motion as to Ms. Glas, reasoning that her damages were too speculative. Ms. Glas filed a post-judgment motion asking the court to alter or amend the judgment in her favor and for a new trial concerning damages. The district court denied the motion.

With the exception of one homeowner, William Gorog, the jury returned verdicts in favor of all Homeowners and against Goodyear on three theories of recovery: sale of a defective product, negligence, and negligent failure to warn. The jury awarded Homeowners damages in the aggregate of $4,079,391.50. J.A. at 800-943. The jury found in favor of Goodyear and Heatway on all claims for violation of the CCPA and civil conspiracy. Neither Goodyear nor Heatway prevailed on its cross-claim against the other. The jury did, however, apportion fault evenly between Goodyear and Heatway as to all prevailing Homeowners.

With respect to the jury's apportionment of fault to Heatway, Homeowners filed a post-trial motion for judgment as a matter of law or to alter or amend the

judgment pursuant to Fed. R. Civ. P. 50(b) and 59(e) respectively. Homeowners argued that because the jury did not find Heatway liable on any of the Heatway plaintiffs' claims or on Goodyear's cross-claim, damages were not appropriately apportioned to it as a nonparty at fault. J.A. at 1146. The district court denied the motion.

As to the Holzwarths, the jury awarded them $243,072 in "reasonable repair and/or replacement costs." The jury awarded Sutterley/Kilgore $240,071 in "other reasonable costs or losses." After the district court entered judgment on the jury's verdicts, Goodyear renewed its motion for judgment as a matter of law as to the claims of the Holzwarths and Sutterley/Kilgore, pursuant to Fed. R. Civ. P. 50(b). Goodyear argued that the Holzwarths and Sutterley/Kilgore presented evidence and were awarded damages for future repair costs that they had not incurred and would never incur because they had already sold their homes. J.A. at 1050-58. The district court construed the motion as a Fed. R. Civ. P. 59(e) motion and granted it. As such, the district court amended the judgment and reduced the Holzwarths' jury award to $43,072 and Sutterley/Kilgore's jury award to $44,000, thereby eliminating the portions of their awards which the district court interpreted as representing future repair costs.

With respect to Mr. Gorog, the only homeowner against whom Goodyear had asserted a statute of limitations defense, the jury found in favor of Goodyear

on all claims. But the jury did not answer the questions on the verdict form about Goodyear's statute of limitations defense. The district court entered judgment against Mr. Gorog. After entry of judgment, Mr. Gorog moved for judgment as a matter of law, to alter or amend the judgement or for a new trial. The district court denied the motion.

After trial, Homeowners moved for prejudgment interest. The district court held that Homeowners were entitled to prejudgment interest from the date on which the hydronic heating systems, containing Entran II, were originally installed in the Homeowners' respective homes. The district court awarded prejudgment interest in the aggregate of $5,701,367.

Homeowners appeal from the district court's order contending that (1) the jury rendered inconsistent verdicts and the district court's attempt to reconcile the verdicts conflicts with the jury instructions and Colorado law, and the district court erred (2) in reducing the jury's award of damages to the Holzwarths and Sutterley/Kilgore, (3) in granting judgment as a matter of law in favor of Goodyear on Ms. Glas's damage claims, and (4) in granting judgment in favor of Goodyear on Mr. Gorog's claims when the jury failed to answer the questions about Goodyear's limitations defense. Goodyear cross-appeals arguing that the district court erred in determining that prejudgment interest should be calculated from the date of installation of the heating systems. Goodyear also conditionally

cross-appeals contending that the district court erred in instructing the jury on design defect. Goodyear asks us to address its conditional cross-appeal in the event we reverse the fifty percent apportionment of fault to Heatway or order a new trial on the claims of the Holzwarths, Sutterley/Kilgore, Ms. Glas or Mr. Gorog. We deal with each issue in turn.

## Discussion

### I. *Apportionment of Fault*

Homeowners contend that the district court erred in denying its post-trial motion for judgment as a matter of law or to alter or amend the judgment. Homeowners' argument on appeal is twofold: first, the jury rendered inconsistent verdicts; and second, the district court's attempt to reconcile the verdicts conflicts with the jury instructions and Colorado law.

As a preliminary matter, Goodyear asserts that Homeowners' post-trial motion never raised the argument that the jury verdicts were inconsistent. Upon review of Homeowners' motion, Goodyear's response, and the district court's order relating thereto, we are satisfied that the issue was adequately raised post-trial. See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1229 (10th Cir. 2000) (Rule 50 "does require that [the grounds for a motion] be stated with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion.") (internal quotations and citations omitted). Homeowners did not, however, make a Rule 50(a) motion on the grounds that Goodyear's evidence was insufficient as to Heatway's fault at the close of all the evidence. Accordingly, relief under Rule 50(b) is unavailable. See Fed. R. Civ. P. 50(b); Trotter v. Todd, 719 F.2d 346, 350 (10th Cir. 1983).

Whether Homeowners' Rule 59(e) motion may be used to secure the relief

-10-

sought is a closer question. "A Rule 59(e) motion to alter or amend the judgment should be granted only to correct manifest errors of law or to present newly discovered evidence." Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997) (internal quotations and citations omitted). Although this circuit has not directly addressed whether a Rule 59(e) motion, in its role of correcting manifest errors of law, may be used to contest verdict inconsistencies, other circuits have so allowed. See Munafo v. Metro. Transit Auth., 381 F.3d 99, 105 (2d Cir. 2004); Top of Iowa Co-op v. Schewe, 324 F.3d 627, 632 (8th Cir. 2003); Turyna v. Martam Const. Co., Inc., 83 F.3d 178, 181-82 (7th Cir. 1996). On such authority, we are persuaded that Homeowners' Rule 59(e) motion was appropriate to raise the issues presented here.

This court reviews the district court's ruling on a Rule 59(e) motion for abuse of discretion. Minshall v. McGraw Hill Broadcasting Co., Inc., 323 F.3d 1273, 1287 (10th Cir. 2003). Accordingly, we will not reverse the decision of the district court unless the district court made a "clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Id. (citations omitted). "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005) (internal quotations and citations omitted).

In order to protect the jury's function, courts must "reconcile the jury's

findings, by exegesis if necessary, . . . before [they] are free to disregard the jury's special verdict and remand the case for a new trial." Johnson v. Ablt Trucking Co., Inc., 412 F.3d 1138, 1143 (10th Cir. 2005) (quoting Gallick v. Baltimore & Ohio R.Co., 372 U.S. 108, 119 (1963)). "When reviewing claims that a jury verdict is inconsistent, [the reviewing court] must accept any reasonable view of the case that makes the jury's answers consistent." Heno v. Sprint/United Mgmt. Col., 208 F.3d 847, 852 (10th Cir. 2000) (quoting Patton v. TIC United Corp., 77 F.3d 1235, 1241 (10th Cir. 1996)). The consistency of a jury's verdict must be considered in light of the instructions given to the jury, among other factors. See Harvey By and Through Harvey v. General Motors Corp., 873 F.2d 1343, 1348 (10th Cir. 1989). When the jury provides answers that are irreconcilably inconsistent, the court cannot enter judgment without choosing between the conflicting findings of fact and thereby overturning one of them. Johnson, 412 F.3d at 1144. To be irreconcilably inconsistent, the jury's answers must be "logically incompatible, thereby indicating that the jury was confused or abused its power." Id. (quoting Stone v. Chicago, 738 F.2d 896, 899 (7th Cir. 1984)). A jury's verdict may not be overturned merely because the reviewing court finds the jury's resolution of different questions in the case difficult, though not impossible, to square. Id.

    A. *Verdict Inconsistencies*

With the exception of Mr. Gorog, the jury returned the following verdict (the "Apportionment Verdict") for each homeowner:

> APPORTIONMENT OF FAULT
> []Taking as 100 percent the combined fault that caused the damages or losses, what percentage of plaintiff's damages was caused by the fault of each person or entity identified below. Enter the figure of zero, "0" for any person or entity who you have found to be not at fault.
>
> | | |
> |---|---|
> | Goodyear: | 50% |
> | Heatway: | 50% |
> | Other non-parties: | 0% |

See J.A. at 802-942.

The jury found in favor of Heatway on all claims asserted against it as a party, including violation of the CCPA, civil conspiracy, and fraud (the "No Liability Verdict"). Homeowners maintain "[t]hese findings necessarily meant that Heatway was not at fault — and [the Apportionment Verdict's instruction] to 'enter zero' for any party found not to be at fault was applicable." (Aplt. Op. Br. at 19). Homeowners therefore argue that the jury's allocation of fifty percent fault in the Apportionment Verdict is irreconcilably inconsistent with the No Liability Verdict and "the correct resolution is to disregard the Apportionment Verdict as surplusage and give effect only to the jury's finding that Heatway was not at fault." Id.

The district court rejected the Homeowners' argument that the jury was

somehow precluded from assessing fault to Heatway. It concluded that Goodyear was not required to cross-claim against Heatway and prevail on claims against it in order to have the jury instructed as to apportionment of fault. In any event, the district court observed that Homeowners never objected to the verdict forms on this basis. The district court further reasoned:

> Plaintiffs did not pursue claims against Heatway based on the sale of a defective product, negligence or negligent failure to warn – the very claims upon which the jury found Goodyear liable. Here, it is not only plausible, but likely that the jury concluded Heatway and Goodyear to both be 'at-fault' for negligence, negligent failure to warn, and sale of a defective product, but not liable for violation of the CCPA or for civil conspiracy. The verdict is wholly consistent. . .

J.A. at 1880-81. We agree.

Homeowners attempt to manufacture a conflict where one does not exist. As noted, the instruction within the Apportionment Verdict actually stated that the jury was to "enter zero for any *person* or *entity* found not at fault," not "*any party* found not at fault." J.A. at 802-942 (emphasis supplied). The actual instruction properly preserves the distinction between Heatway's role as a party to certain claims and a nonparty to other claims. Although Heatway was found not liable for the claims asserted against it as a *party* (CCPA, civil conspiracy and fraud), the jury was still required to address its "fault" as a *nonparty* to the claims successfully asserted against Goodyear (sale of a defective product, negligence, and negligent failure to warn). Thus, the verdicts are not irreconcilably

-14-

inconsistent.

B. *District Court's Verdict Reconciliation*

Homeowners argue that the district court's conclusion that the jury "likely concluded" Heatway to be at fault for the claims successfully asserted against Goodyear rests on the erroneous assumption that the jury was instructed to assess Heatway's fault as a nonparty as to these claims. Homeowners further maintain that to the extent the verdict was sustained on these grounds, Heatway could not be considered a nonparty to these claims because Goodyear failed, under Colorado law, to plead and prove as such.

*1. Jury Instructions*

Homeowners maintain, on several grounds, that the jury was instructed to consider Heatway's fault *only* with respect to claims asserted against it as a defendant. First, Homeowners point to the jury instruction's repeated reference to Heatway and Goodyear in their capacity as defendants. (Aplt. Op. Br. at 33-36). Yet, the repeated reference to Heatway as a defendant does not compel the conclusion that the jury was foreclosed from considering Heatway's fault as a nonparty with respect to the claims asserted against Goodyear. No instruction to that effect was given, nor did Homeowners request one.

Second, paragraph 3 of Instruction 23[1] directed the jury to compare "the

---

[1] Instruction 23, which pertained to apportionment of fault, stated as follows (numbers have been added in brackets at the beginning of each paragraph of Instruction 23 to facilitate reference to them):

**[1]** If you find that a plaintiff Homeowner had damages and that these damages were caused by the negligence or fault of any one or more of the defendants, Goodyear or Heatway, you must then determine:

    1.      whether any nonparties were negligent or at fault; and
    2.      whether any such negligence or fault of the nonparties contributed to the plaintiff's damages.

**[2]** The negligence or fault of the nonparties are affirmative defenses that must be proved by a preponderance of the evidence.

**[3]** The fault, if any, of Goodyear and/or Heatway, and the nonparties contributing to the damage shall be compared by the jury. 'Fault' includes sale of a defective product, negligence, negligent failure to warn, violation of the Colorado Consumer Protection Act, and civil conspiracy.

**[4]** If you find that one or more of the nonparties were negligent or at fault, then you must also determine to what extent the negligence or fault of each of the defendants, and the negligence or fault of the designated nonparties, if any, contributed to that plaintiff Homeowner's damages, expressed as a percentage of 100 percent.

**[5]** If the plaintiff Homeowner is allowed to recover, the total amount of the damages awarded will be reduced by the percentage of the negligence or fault, if any, of the designated nonparties.

**[6]** If you find no negligence or fault on the part of nonparties, you must still determine to what extent the negligence or fault of each of the defendants contributed to the plaintiff Homeowner's damages, expressed as a percentage of 100 percent.

J.A. at 778-79.

-16-

fault, if any, of Goodyear and/or Heatway" with that of the "nonparties." Homeowners argue that "[i]f this reference to 'Heatway' were not meant to refer to Heatway in its capacity as a defendant, this sentence would be confusing at a minimum: it would ask the jury to compare the fault of Heatway as a defendant with the fault of Heatway as a nonparty." (Aplt. Op. Br. at 35). However, with regards to non-party status in this context, persons and entities are nonparties in their relation to claims, not the litigation. Heatway was a nonparty with respect to the claims asserted against Goodyear by Homeowners. Heatway was a party to the claims asserted against it by the Heatway plaintiffs. Thus, the jury was not asked to compare the fault of Heatway as a defendant with the fault of Heatway as a nonparty.

Third, paragraph 3 of Instruction 23 omits, from the list of theories that could constitute "fault," any mention of fraud. Homeowners assert that if Goodyear had chosen to include theories beyond those urged by the Heatway plaintiffs (CCPA and civil conspiracy) and including sale of a defective product, negligence and negligent failure to warn, Goodyear surely would have demanded that fraud be added to the list. This argument is wholly speculative. Goodyear may not have listed fraud as a theory of "fault" *because* it asserted a cross-claim against Heatway based on fraud, i.e., both Heatway and Goodyear were already parties to the fraud claim. Regardless, the absence of fraud in the list does not

-17-

control this issue.

Last, Homeowners argue that the district court's assumption that the jury could have found Heatway at fault for negligence, negligent failure to warn, and sale of a defective product was incorrect because its reliance on the term "fault," as defined in Instruction 23, was misplaced. Homeowners maintain that the definition of the term "fault" was merely a convenient "checklist" for the jury of all the theories of liability asserted against one or both of the defendants, Goodyear and Heatway, and that it was not intended to supersede all of the other instructions and submit to the jury theories of fault against Heatway that had not been raised. This argument is unavailing. The jury instructions defining the elements of the claims asserted against Goodyear specifically required the jury to "consider Goodyear's defense[] of . . . the fault of others." J.A. at 755-56, 759, 765, 768. Thus, to the extent that the district court relied on the definition of the term "fault," within Instruction 23, its reliance was supported by the underlying elements of the claims instructions. Accordingly, we find no inconsistency between the verdicts and the jury instructions. The contended-for construction by the Homeowners borders on tortured.

2. *Colorado Law*

Homeowners also argue that to the extent the district court upheld the jury's apportionment of fault to Heatway as a nonparty to the claims successfully

asserted against Goodyear, it adopted an interpretation of the verdict that conflicts with Colorado law.  Homeowners maintain that in order for the jury to apportion fault to Heatway based on the claims asserted against Goodyear, Goodyear was required to plead and prove that Heatway was at fault as a nonparty on these grounds; yet it failed to do so.

In Redden v. SCI Colo. Funeral Servs., Inc., 38 P.3d 75, 80-81 (Colo. 2001) and Barton v. Adams Rental, Inc., 938 P.2d 532, 535-40 (Colo. 1997), the Colorado Supreme Court set forth the relevant requirements of the Colorado apportionment statute, Colo. Rev. Stat. § 13-21-111.5.  First, a party must sufficiently designate the nonparty by making "a brief statement of the basis for believing such nonparty to be at fault."  Redden, 38 P.3d at 80 (quoting Colo. Rev. Stat. § 13-21-111.5(3)(b)).  To satisfy this requirement, the party must "allege the basis for believing the nonparty is legally liable to the extent the non-party's acts or omissions would satisfy all the elements of a [] claim."  Id. at 81.  Courts should "construe designation requirements strictly to avoid a defendant attributing liability to a non-party from whom the plaintiff cannot recover."  Id. at 80.  Second, the defendant seeking the allocation of fault must present sufficient evidence at trial to support a finding on each of the essential elements of the claimed basis for a finding of fault.  See Barton, 938 P.2d at 536-37.

Goodyear's initial designation of Heatway as a nonparty at fault stemmed from its cross-reference to allegations it made in its Answer to Plaintiffs' Complaint ("Goodyear's Answer") and Cross-Claim against Heatway ("Goodyear's Cross-Claim"). J.A. at 310-12. Goodyear's Answer contained no allegation of fault against Heatway. See J.A. at 296A-P. Homeowners contend, therefore, that Goodyear's Cross-Claim, which asserted that Heatway had committed fraud, was the operative pleading. (Aplt. Op. Br. at 23); see J.A. at 250-56. Accordingly, Homeowners maintain that Goodyear's designation of Heatway as a nonparty at fault was limited to its allegation of fraud, and that the jury was thereby precluded from considering any other claims in determining Heatway's fault. (Aplt. Op. Br. at 39).

The Amended Final Pretrial Order, dated February 3, 2003, however, by its own terms supplanted all prior pleadings of the parties. J.A. at 317-45. The Amended Pretrial Order states:

> Plaintiffs' claims asserted against Goodyear are barred or reduced to the degree or percentage of *negligence or fault* attributable to certain *non-parties* at fault pursuant to § 13-21-111.5, C.R.S.

J.A. at 322 (emphasis supplied).

Homeowners argue that the Amended Final Pretrial Order "affords no basis for altering the plain meaning of Goodyear's specific designation of Heatway as a nonparty at fault." (Aplt. Reply Br. at 44). We disagree. To the extent

-20-

Goodyear's Cross-Claim was the operative document, it was obviated by the Amended Final Pretrial Order which clearly contemplated the reduction of Goodyear's liability based on the "negligence or fault" of nonparties, including Heatway. Further, logic compels the conclusion that the Amended Final Pretrial Order contemplated more than the fraud allegation contained in Goodyear's Cross-Claim because Heatway was not a nonparty to that claim; it was the defendant. Moreover, to the extent Goodyear's designation of Heatway in the Amended Final Pretrial Order was insufficient or lacked a basis for altering its designation in Goodyear's Cross-Claim, the Homeowners failed to make a timely objection on that basis. Cf. Redden, 38 P.3d at 79-80 (plaintiff objected to a nonparty designation before the case was submitted to the jury).

Homeowners maintain that even if Goodyear's designation was proper, Goodyear failed to provide sufficient evidence that Heatway was negligent or at fault. The jury apportioned fifty percent "fault" to Heatway as a nonparty to the claims successfully asserted against Goodyear, but the verdict form did not allow the jury to indicate the claimed basis for its finding of fault: defective product, negligence, or negligent failure to warn. That is, the apportionment of fault verdict was general. As such, the jury's apportionment of fault to Heatway could have been based on defective product, negligence, or negligent failure to warn.

Homeowners did not object to the instructions defining the elements of

-21-

each claim, and our review of Colorado law reveals that they were proper.  The

jury instructions on defective product and negligence both required the jury to

find Goodyear manufactured Entran II.  J.A. at 755-64.  The jury instruction on

negligent failure to warn was not so restricted:

> If a manufacturer or seller of a product knows or in the exercise of
> reasonable care should know that the use of a product may be
> harmful or injurious to a consumer's or user's property, and such risk
> of harm or injury is not obvious to a reasonable consumer or user,
> then the manufacturer or seller must use reasonable care to warn the
> consumer or user of the risk of harm or injury if a reasonably
> careful person would under the same or similar circumstances. The
> failure to do so is negligence.

J.A. at 763.

Upon review of record, we have little trouble concluding that sufficient

evidence was adduced at trial to support such a finding.  The Homeowners'

failure to use a corrosion preventative may have contributed to the harmful effect

that Entran II had on the Homeowners' hydronic heating systems, and ultimately

their homes.  Further evidence suggested that such risk of harm or injury was not

obvious to Homeowners.  Evidence was also presented that Heatway failed to use

reasonable care to warn the Homeowners of these risks by, for example, providing

them with instructions for the use of Entran II, including the need for corrosion

prevention.

Homeowners argue that Heatway was not aware of any problems with the

design of Entran II and thus could not have been negligent for failing to warn the

-22-

Homeowners of the risks associated therewith. However, this argument unduly narrows what the jury was required to find in order to conclude that Heatway was at fault for negligent failure to warn. The jury was required to determine whether Heatway, knew or *in the exercise of reasonable care should have known*, that the use of Entran II may be harmful or injurious to the Homeowners' property. See J.A. at 763. A reasonable jury could well have found that Heatway, in the exercise of reasonable care, should have known of the risks associated with using Entran II and that it acted negligently in failing to warn the Homeowners thereof. Moreover, it was reasonable for the jury to conclude that this negligence contributed to the Homeowners' damages. Therefore, we will not disturb the jury's determination that Heatway was equally at fault for the damages suffered by the Homeowners. The district court did not abuse its discretion in denying Heatway's post-judgment motion on this basis.

## II. *Sutterley/Kilgore and the Holzwarths*

Although the district court construed Goodyear's Rule 50(b) motion as a Rule 59(e) motion, it effectively granted Goodyear judgment as a matter of law on two grounds. First, because the jury awards mirrored the amounts Homeowners' expert testified were appropriate for future repair costs, these damages were impermissible. The Holzwarths and Sutterley/Kilgore would never incur those costs as they had already sold their homes, and thus the awards exceeded the

amount which could have been granted based upon the evidence. Second, to the extent future repair costs served as a proxy for the losses these homeowners incurred on selling their homes, the jury was given the opportunity to award them diminution in value damages, but declined to do so. The Holzwarths and Sutterley/Kilgore ask us to reverse the district court's grant of Goodyear's motion and to reinstate the full amount of their jury verdicts. They assert that they provided sufficient evidence to support the jury's awards because future repair costs represented a proxy for the amount they lost on the sale of their homes. Further, they maintain that because the evidence supports the damages awarded, the district court should have given effect to the jury's intention to award these diminution in value damages. We agree.

We review the grant of a motion for judgment as a matter of law de novo, reviewing all of the evidence in the record. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). All reasonable inferences are drawn in favor of the nonmoving party and this court does "not make credibility determinations or weigh the evidence." Id. Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." Finley v. United States, 82 F.3d 966, 968 (10th Cir. 1996) (internal quotation and citation omitted). We will reverse the district court if, viewing the record in the

light most favorable to the nonmoving party, we find evidence upon which the jury could have properly returned a verdict in its favor. See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996). In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof. Oja v. Howmedica, Inc., 111 F.3d 782, 792 (10th Cir. 1997).

Under Colorado law, diminution in value is ordinarily the rule applied to measure damages to real property. See Board of County Com'rs of Weld County v. Slovek, 723 P.2d 1309, 1314 (Colo. 1986). The goal in compensating the property owner is to reimburse that owner for the actual loss suffered. Id. Damages are not recoverable, however, for losses beyond an amount that a plaintiff can establish with reasonable certainty by a preponderance of the evidence. Pomeranz v. McDonalds's Corp., 843 P.2d 1378, 1381 (Colo. 1993). The "rule of certainty" requires a reasonable degree of persuasiveness in the proof of the fact of damages or injury. Western Cities Broadcasting, Inc. v. Schueller, 849 P.2d 44, 48 (Colo. 1993) (interpreting Pomeranz, 843 P.2d 1378) (quotations in original)). Once the fact of damage has been established with the requisite degree of certainty, a plaintiff will not be barred from recovery for failing to prove the amount of loss with mathematical certainty. Id. The amount of damages to be awarded is a matter within the sole province of the jury, and such

award may not be disturbed unless it is completely without support in the record. Margenau v. Bowlin, 12 P.3d 1214, 1218 (Colo. Ct. App. 2000); see Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir. 1985) ("[T]he amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it.").

*A. Sufficiency of the evidence*

Our review of the record reveals the following. At trial, Mr. Holzwarth testified that he and his wife incurred $43,072 in repair costs due to the problems they experienced with their hydronic heating system. He also testified that they considered repairing or replacing the Entran II, estimating the cost to be as much as $200,000. Tr. Vol. XVIII at 1933. The Holzwarths' expert, Mr. Wilson, supported that estimate. Id. Vol. XXX at 3105. Due to the high cost, the Holzwarths sold their home without replacing the hydronic heating system. Mr. Holzwarth testified that in his opinion, they received $150,000 to $200,000 less for their home then they would have had it contained a fully functional hydronic heating system. Id. at 1938-39. Based on this testimony, the jury could have returned a verdict in the Holzwarths' favor for $200,000 in diminution in value damages. Mr. Holzwarth, as the twelve-year owner of the home since it was built, was qualified to testify regarding its value. See United States v. 10,031.98 Acres of Land, 850 F.2d 634, 636-37 (10th Cir. 1988).

To the extent the district court concluded that $200,000 of the jury's award to the Holzwarths was attributable to the testimony of Mr. Wilson regarding future repair costs, a different conclusion is not required. The Holzwarth's decision to forego complete repair or replacement of the hydronic heating system was a function of the high cost of doing so. The jury was free to make the reasonable inference that the purchase price of the Holzwarth's home was diminished by that amount. This evidence was sufficient to support the jury's award of $243,072[2] in favor of the Holzwarths.

Sutterley/Kilgore, like the Holzwarths, sold their home before trial. At trial, Ms. Sutterley testified that when she first listed her home – prior to her discovery of any alleged defects in the Entran II hose – she listed it for $849,000. Tr. Vol. XXVI at 2701. She later learned about the problems associated with Entran II from a realtor and various plumbers. Id. at 2701-02. After evaluating the difficulties with repairing or replacing the Entran II, Sutterley/Kilgore disclosed the problem and dropped the listing price to $799,000. Id. at 2703-04. Ms. Sutterley eventually sold the home for $750,000. Id. at 2706. In her opinion, she "solidly" lost $100,000 on the sale of her home because of the presence of Entran II. Id. at 2705-06. Ms. Sutterley, as the designer and owner of the home since it was built, was qualified to testify regarding its value. See 10,031.98

_____

[2] Goodyear does not challenge the $43,072 portion of the jury award.

Acres of Land, 850 F.2d at 636-37. In addition, Mr. Wilson testified that the cost to repair the hydronic heating system in the Sutterley/Kilgore home would be approximately $240,000. Tr. Vol. XXX at 3116.

The jury awarded Sutterley/Kilgore $240,071. The testimony of Ms. Sutterley and Mr. Wilson provide sufficient evidence to sustain this award. Ms. Sutterley testified that she lowered the asking price of her home because of the difficulties associated with repairing or replacing the Entran II hose. Mr. Wilson testified that the cost to repair or replace the Entran II hose in the Sutterley/Kilgore home would be approximately $240,000. As with the Holzwarths, the jury was free to make the reasonable inference that the purchase price of the Sutterley/Kilgore home was diminished by the amount Mr. Wilson testified to. Although the $240,000 figure exceeded Ms. Sutterley's assessment that she "solidly" lost $100,00 on the sale of her home, because Sutterley/Kilgore sufficiently established the fact of damages, it was within the province of the jury to determine the amount of those damages to be awarded.[3]

_____

[3] Goodyear does not challenge the $44,000 portion of the jury award the district court attributed to the cost of the bridge loan that Ms. Sutterley testified to maintaining while her house remained unsold. Tr. Vol. XXVI at 2705. However, based on the award of $240,071 to Sutterley/Kilgore, it appears that the jury did not award them damages based on these costs. In addition, our review of the record does not reveal a basis for the $71 difference between the amount testified to by Mr. Wilson ($240,000) and the jury award ($240,071). This difference is, however, immaterial to our consideration of the issues presented here.

(continued...)

Goodyear argues that any claim of Sutterley/Kilgore that future repair costs were a proxy for pre-repair, diminution in value damages was contradicted by counsel's closing. Counsel suggested $59,000 for the decrease in market value of the Suttereley/Kilgore home. The jury was properly instructed, however, that "statements and arguments are not evidence in this case." J.A. at 746. Counsel's closing arguments did not alter the evidence before the jury.

Goodyear also urges us to reject the characterization of the damages theory by these homeowners. Goodyear maintains that the Holzwarths and Sutterley/Kilgore made a pretrial election to seek repair or replacement costs and post-repair uncertainty damages[4] that foreclosed them from seeking damages for the diminished prices at which they sold there homes. (Goodyear Ans. Br. at 57). Given the record, though, we cannot accept this contention. Without objection by Goodyear, these homeowners presented evidence at trial that they sold their homes at a diminished price because of Entran II. In fact, counsel for Goodyear diligently cross-examined both Mr. Holzwarth and Ms. Sutterley on this issue. Tr. Vol. XVIII at 1941-43; Vol. XXVI at 2709. Any argument that the Holzwarths and Sutterley/Kilgore were prohibited from seeking damages under a

---

[3](...continued)

[4] Uncertainty damages represent the decrease in the value of the Homeowners' homes after the hydronic heating systems were repaired or replaced due to the market's perception of Entran II.

diminution in value theory was waived by Goodyear when it implicitly consented to trial of the issue. Fed. R. Civ. P. 15(b) (pleadings deemed amended when issues tried by consent); Green Country Food Market, Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1280 (10th Cir. 2004) ("A party impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence.").

Goodyear also argues that the Holzwarths and Sutterley/Kilgore should be precluded from seeking diminution in value damages under the election of remedies doctrine, citing Lakeside Ventures, L.L.C. v. Lakeside Dev. Co., 68 P.3d 516, 519 (Colo. App. 2002). However, the doctrine of election of remedies is inapposite. "The doctrine of election of election of remedies prevents double recovery by requiring a party to make an election when the remedies sought are inconsistent and contradictory. It has no application where a party seeks only one remedy." Id. Here, the Holzwarths and Sutterley/Kilgore did not seek inconsistent remedies. They did not seek both pre-repair diminution in value damages and costs to repair or replace. Rather, they argue that future repair costs serve as a proxy by which to measure the losses they sustained on the sale of their homes.

Last, Goodyear emphasizes that the Holzwarths and Sutterley/Kilgore

-30-

provided no basis for their opinions on the value of their property. But both Mr. Holzwarth and Ms. Sutterley are deemed to have special knowledge of their property given their long ownership and familiarity with it. See 10,031.98 Acres of Land, 850 F.2d at 636. Moreover, neither Mr. Holzwarth nor Ms. Sutterley negated their special knowledge by their own testimony. Cf. id. (owner of property in condemnation suit negated the presumption of special knowledge by testifying that he relied on impermissible grounds when opining on the value of his property). Accordingly, they were permitted to offer such testimony without further qualification. Id. Furthermore, in testifying as to the value of their property they were entitled to the privileges of a testifying expert. Id.

### B. Damages Verdict

The jury placed the total $243,072 it awarded the Holzwarths in the category of the verdict form labeled "reasonable repair and/or replacement costs." J.A. at 867. The jury awarded Sutterley/Kilgore $240,071 in the category of the verdict form labeled "other reasonable costs or losses." J.A. at 923. The district court concluded that although the jury was provided the opportunity to award "loss in market value" damages, it declined to do so. J.A. at 1873. It reasoned that the jury's categorization of the damages was inconsistent with the theory of damages advanced by the Holzwarths and Sutterley/Kilgore.

When reviewing jury verdicts, we are guided by our duty to attempt to

reconcile the jury's answers to special verdict questions. See, e.g., Heno, 208 F.3d at 852; Gallick, 372 U.S. at 119 ("We ... must attempt to reconcile the jury's findings, by exegesis if necessary, ..., before we are free to disregard the jury's special verdict and remand the case for a new trial."). If there is any reasonable view of the case which makes the answers consistent, the case must be resolved in that way. See Heno, 208 F.3d at 852; Palmer v. City of Monticello, 31 F.3d 1499, 1505 (10th Cir. 1994). The consistency of a jury's verdict must be considered in light of the instructions given to the jury, among other factors. See Harvey, 873 F.2d at 1348.

The jury was instructed that "[t]he Homeowners have the burden of proving the *nature* and extent of their compensatory damages by a preponderance of the evidence." J.A. at 779 (emphasis supplied). The jury was further instructed that "[i]n determining these damages, you *shall consider* the following: (1) reasonable repair and/or replacement costs, if any; (2) other reasonable costs or losses, if any; and (3) the decrease in market value, if any, to the Homeowner's homes, as repaired." Id. (emphasis supplied). We note that category (1) does not state "reasonable repair and/or replacement costs *incurred*" and a reasonable jury certainly could conclude in light of the evidence that the categories were not mutually exclusive.

The Holzwarths put forth evidence to substantiate the nature of their

-32-

damages. While living at the home, the Holzwarths incurred $43,072 in repair costs due to Entran II, an amount which is uncontested by Goodyear. As discussed, the Holzwarths also provided evidence to support their claim for diminution in value damages. A fair reading of the jury's verdict suggests the jury accepted the Holzwarths' diminution in value theory of damages and, as required by the jury instructions, *considered* the amount Mr. Wilson testified to would *cost to repair or replace* the Holzwarths' hydronic heating system. As such, the jury placed the corresponding $200,000 amount in the category for "reasonable repair and/or replacement costs." The jury was not limited to "reasonable repair and/or replacement costs incurred, and could well have decided that the diminution in value of $200,000 was an excellent proxy for the repair and/or replacement costs that would have been required to remedy this problem. Although other interpretations may be reasonable, this view harmonizes the jury's verdict and we are bound by it. Accordingly, the jury's award of $243,072 to the Holzwarths must be reinstated.

Sutterley/Kilgore also put forth evidence to substantiate the nature of their damages, i.e., their claim for diminution in value damages. Unlike the verdict form given to the jury for the Holzwarths claims, the verdict form for Sutterley/Kilgore did not have a category for "reasonable repair and/or replacement costs." Instead, in considering the damages to award

Sutterley/Kilgore, the jury had the option to award either "other reasonable costs or losses," or "the decrease in market value, if any, *as repaired*." J.A. at 923 (emphasis supplied). The jury awarded Sutterley/Kilgore $240,071 as other "other reasonable costs or losses." Id. A fair reading of the jury's verdict indicates that this was the proper category for the jury to place the award because Sutterley/Kilgore did not have their home repaired. Again, this view harmonizes the jury's verdict and we are bound by it. As such, the jury's award of $240,071 to Sutterley/Kilgore must be reinstated.

### III. *Dismissal of Ms. Glas's claims*

Ms. Glas argues that she presented sufficient evidence that the presence of Entran II in her home decreased its sale price. (Aplt. Op. Br. at 49). She seeks remand of her claims and requests that Goodyear be precluded from relitigating the issue of liability on her claims for defective product, negligence, and negligent failure to warn under the doctrine of law-of-the-case. Accordingly, Ms. Glas requests that we enter judgment for her on the issue of liability and order a new trial limited to damages.

Applying de novo review to the district court's grant of judgment as a matter of law and applying Colorado law concerning damages, our review of the record reveals the following. Ms. Glas had a long history with Entran II before the sale of her home. She listed the home for sale on several occasions. Tr. Vol.

XXII at 2413. The fact that Entran II was installed in the home was disclosed in each listing. Id. at 2414. Ms. Glas testified that one realtor refused to continue listing her home unless she fixed the problem with her heating system. Id. Upon Ms. Glas's request, a construction company provided her an estimate of $640,000 to remove the Entran II hose. Id. at 2415. She declined to have the work performed.

In 2001, after this litigation commenced, Ms. Glas contracted with a new real estate broker, Richard Kesler. Id. at 2429. The broker testified that he advised Ms. Glas that Entran II would decrease the market value of her home. Id. at 2438-39. Based on her own experience and her broker's advice, Ms. Glas listed her home for $8.1 million. In addition to the price, the listing stated: "[s]eller shall be entitled to any proceeds from this litigation as partial compensation for any reduction in the purchase price for the subject property." Id. at 2428. The home ultimately sold for $6,450,000, $1.65 million below the listing price. Id. at 2425-26. Ms. Glas testified that she believed the presence of Entran II was the cause of the reduced price she was offered and ultimately accepted for her home. Id. at 2425. In addition, Mr. Wilson testified that if Ms. Glas owned the home at the time of trial, she would have to pay approximately $710,000 to have the Entran II replaced and would incur uncertainty damages of approximately $211,000.

The district court initially set forth its reasons for granting Goodyear's

motion for judgment as a matter of law in its ruling of July 17, 2003. The district

court reasoned:

> [T]here is no dispute that [Ms. Glas] has no out-of-pocket past repair
> costs. In light of her testimony, as well as Mr. Wilson, and the
> [purchaser], it is apparent to me that even in the light most favorable
> to this plaintiff, any damages with regard to future repair costs,
> estimated at $709,718, and uncertainty in the amount of $211,100, is
> wholly speculative. It has no reasonable foundational basis to submit
> this claim by this plaintiff to the jury. Each of the claims pled by the
> plaintiff and tried in this case have as an element that damage was
> caused by the conduct inherent in each claim. . . . I have an
> unwavering conviction that her damage claim is wholly speculative.

Tr. Vol. XLIII at 4895-96.

In a later written order, the district court reinforced its conclusion by again

referring to deposition testimony admitted at trial concerning the intent of the

home's purchaser. The purchaser testified that his primary purpose in buying Ms.

Glas's property was to use the land as a ranch and that the presence of Entran II

was "never a negative to the property" and "never used as a negotiating point on

my behalf to the property." J.A. at 1875-76. The district court also noted Mr.

Kesler's testimony that the existence of Entran II was never a specific item of

negotiation with the purchaser; the home's price negotiations were "more

generalized." Id. at 1876. The district court concluded that "in whole, no

evidence supports Ms. Glas's claim for damages caused by a decrease in market

value due to Entran II in her home." Id.

The evidence provided by Ms. Glas does not materially differ from that of the Holzwarths and Sutterely/Kilgore. The only noticeable difference in the district court's disposition of Goodyear's motion for judgment as a matter of law with respect to Ms. Glas's claims appears to be the district court's reliance on the purchaser's intent when buying Ms. Glas's home. The district court's heavy reliance on the purchaser's intent was error. The testimony of the purchaser was, at most, some evidence for the jury to weigh against Ms. Glas's evidence. However, the proper inquiry for the purposes of granting judgment as a matter of law was whether Ms. Glas provided sufficient evidence upon which a jury could determine that the value of her home was decreased due to the presence of Entran II. Construing the evidence and inferences most favorably to Ms. Glas, we are persuaded that she did.[5]

Goodyear again argues that Ms. Glas's pretrial election to seek repair costs and post-repair uncertainty damages foreclosed her from seeking damages she incurred when she sold her home at a diminished value. (Goodyear Ans. Br. at 52). We reject this contention for same reasons already discussed with regards to

---

[5] We also express concern with the district court's reliance on the purchaser's intent in this case because the purchaser bought Ms. Glas's home in the marketplace. Our review of the record reveals, however, that neither Ms. Glas nor Goodyear sufficiently explored the relevant characteristics of the real estate market and the extent to which the market, not an individual market participant, establishes the value for a given property.

the Holzwarths and Sutterley/Kilgore.

Finally, we turn to the relief sought by Ms. Glas. She maintains that the jury's findings of liability against Goodyear on the claims of other homeowners is "law of the case" controlling her claims and that a new trial would be unnecessary on the issue of liability. (Aplt. Op. Br. at 51). Ms. Glas acknowledges, as she must, that the law of the case doctrine does not generally apply to jury verdicts. She notes that the district court entered judgment on the verdicts, both in the case in which Ms. Glas was a plaintiff and the cases consolidated with her own, based on the same claims and evidence. Therefore, she argues that the relief she seeks rests on a purely legal judgment and that a jury's finding of no liability as to her claims could not be sustained. (Aplt. Reply Br. at 53-54).

While her argument is imaginative, the doctrine of law of the case does not apply here. "[T]he law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. Monsisvais, 946 F.2d 114, 115 (10th Cir. 1991) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). Ms. Glas provides no authority for the proposition that once the district court enters judgment on a verdict, it somehow becomes a conclusion of law and thus is appropriate for application within the law of the case context. We decline Ms. Glas's invitation to create such authority. We therefore remand Ms. Glas's claims

-38-

for a new trial.

IV. *Mr. Gorog's Verdict*

Mr. Gorog claims that the district court erred in denying his Rule 59 motion because the jury verdicts cannot logically be reconciled. He asks this court to enter judgment against Goodyear on the issue of liability and for a new trial limited to Goodyear's statute of limitations defense and damages.

We review a trial court's ruling on a motion for new trial or to alter or amend judgment under an abuse of discretion standard. See Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir. 1999); Minshall, 323 F.3d at 1287. Accordingly, this court will not reverse a decision of the district court unless the district court made a "clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Minshall, 323 F.3d at 1287 (citations omitted). As previously discussed, we are required to reconcile verdicts where reasonably possible. The district court denied Mr. Gorog's motions on two grounds: (1) the jury instructions and verdict form could be interpreted to mean that the jury found in favor of Goodyear on its statute of limitations defense, and (2) the jury could have concluded that Mr. Gorog, unlike the other homeowners, failed to prove causation or damages.

The jury instructions defined the elements of each claim and stated that if the homeowner proved the relevant elements then its verdict must be for the

-39-

homeowner on that claim. J.A. at 755-64. These instructions continued:

> As to plaintiff [Mr. Gorog] only, you must also consider Goodyear's affirmative defense of the expiration of the statute of limitation. If you find that this affirmative defense has been proved by a preponderance of the evidence, then *your verdict must be for Goodyear and against plaintiff [Mr. Gorog]*.

Id. at 756, 759 (emphasis supplied).[6] As to each of the claims, the verdict form asked whether Mr. Gorog had proven his claim against Goodyear. The verdict form instructed the jury that if it answered "no" to these questions, then it was not to answer the statute of limitations questions.

The jury returned a verdict against Mr. Gorog on all claims. It did not answer the statute of limitations questions. The district court, noting its "duty to attempt to reconcile jury's answers to special verdict questions in order to avoid the need for retrial," citing Palmer, 31 F.3d at 1505, determined:

> It is reasonable to conclude that the jury read [the] instruction[s] to require it to answer 'no' as to Mr. Gorog's claims because it found in favor of Goodyear on the basis of its defense – in lieu of answering 'yes' to Mr. Gorog's claims and answering 'yes' as to Goodyear's defense to defeat those claims.

J.A. at 1878.

---

[6] As Goodyear points out, and Mr. Gorog does not challenge, the specific jury instruction on negligent failure to warn did not mention Goodyear's statute of limitations defense. J.A. at 763. Instead, the jury was told that a manufacture's or seller's failure to exercise reasonable care to warn of harmful or injurious products constituted negligence. Id. Thus, the failure to warn instruction was to be read with the general instruction on negligence, which did reference Goodyear's statute of limitations defense.

-40-

Understandably, the district court first sought to reconcile the verdict with the statute of limitations evidence. But in reconciling the verdicts, the district court disregarded the jury's express theory of denial and embraced one not addressed by the jury. The jury simply did not answer the statute of limitations question on the verdict form. By concluding that the jury found in favor of Goodyear on this defense, the district court stepped beyond reconciling the verdict with a reasonable view of the case, Palmer, 31 F.3d at 1505, into the impermissible realm of speculation as to what the jury actually determined in violation of Mr. Gorog's Seventh Amendment right to a jury trial. See Carr v. Wal-Mart Store, Inc., 312 F.3d 667, 675 (5th Cir. 2002).

Relying on Domann v. Vigil, 261 F.3d 980, 983 (10th Cir. 2001), Goodyear argues that a "failure by a jury to answer some of the questions in a special verdict does not vitiate an otherwise unanimous verdict where the unanimous answers to the verdict conclusively dispose of the case." (Goodyear Ans. Br. at 48). The principle espoused in Domann does not, however, apply when questions on the verdict form that are vital to the disposition of the case remain unanswered. The district court based its first ground for reconciling the verdict on its conclusion that the jury must have found for Goodyear on its statute of limitations defense. Thus, the jury's answer to the statute of limitations question was necessarily vital to the district's disposition of the case. The principle in

-41-

Domann is inapposite.

We briefly consider the district court's alternative holding. The conclusion that the jury simply could have concluded that Mr. Gorog, unlike the other homeowners, failed to prove causation or damages does not inspire confidence when viewed in the context of the record. Goodyear argues that Mr. Gorog's damages may have been caused by the Dayco hose installed in his home, rather than Entran II hose. (Goodyear Ans. Br. at 49). However, Goodyear offered materially the same evidence regarding Dayco hose in response to the claims of both Mr. Gorog and the Holzwarths. Yet, the jury found for the Holzwarths on their claims of defective product, negligence, and negligent failure to warn. We therefore find it unreasonable to conclude that the jury accepted Goodyear's defense regarding Dayco hose as to Mr. Gorog only.

Accordingly, we turn to the relief sought by Mr. Gorog. He, like Ms. Glas, maintains that the jury's findings of liability against Goodyear on the claims of other homeowners is "law of the case" controlling his claims and that a new trial would be unnecessary on the issue of liability. We reject this contention for the same reasons already discussed with regards to Ms. Glas. We therefore remand Mr. Gorog's claims for a new trial.

V. *Goodyear's Cross-Appeal for Recalculation of Prejudgment Interest*

Goodyear's cross-appeal questions the district court's calculation of

prejudgment interest. The district court granted Homeowners' motion for prejudgment interest under Colo. Rev. Stat. § 5-12-102(1)(b) (2004). The district court determined that prejudgment interest on the jury awards should accrue from the dates on which the Homeowners' heating systems were originally installed. Goodyear maintains that the district court should have set the accrual date on one of two alternate dates: (1) when the Homeowners paid for their repair or replacement costs; or (2) when the Homeowners' claims accrued for purposes of the statute of limitation.

The standard by which we review the district court's grant of prejudgment interest is well established. "A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest." Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1156 (10th Cir. 2000) (quoting Chesapeake Operating, Inc. v. Valence Operating Co., 193 F.3d 1153, 1156 (10th Cir. 1999)). An award of prejudgment interest "is generally subject to an abuse of discretion standard of review on appeal." Driver Music Co. v. Commercial Union Ins. Companies, 94 F.3d 1428, 1433 (10th Cir.1996). However, "any statutory interpretation or legal analysis underlying such an award is reviewed de novo." Id. Whether a particular factual circumstance falls within the terms of the prejudgment interest statute is a question of law reviewed de novo. United Int'l Holdings, 210 F.3d at 1233. We hold that the district court

did not err in its calculation of prejudgment interest based on the date of installation.

Under Colorado law, prejudgment interest in non-personal injury actions is available "at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are *wrongfully withheld* or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." Colo. Rev. Stat. § 5-12-102(1)(b) (emphasis supplied). The district court held that "Goodyear's defective product – whether functional for a time or not – was defective from the time of installation. Accordingly, funds owed for such replacement were wrongfully withheld starting at the time of installation." Loughridge v. Goodyear Tire & Rubber Co., 281 F. Supp. 2d 1252, 1256 (D. Colo. 2003). Although we would be remiss not to say that we are concerned with the equities of allowing a purchaser to enjoy the use of a functional product for years before damages manifest, and then award the purchaser prejudgment interest from the date of purchase, the district court's disposition is consistent with Colorado law and this circuit's precedent.

The Colorado Supreme Court in Mesa Sand & Gravel Co. v. Landfill, Inc., 776 P.2d 362, 353-66 (Colo. 1989) cited a portion of § 5-12-102's legislative history indicating that the legislature intended prevailing parties to recover prejudgment interest from the time of the wrong. Estate of Korf v. A.O. Smith

Harvestore Prod., Inc., 917 F.2d 480, 486 (10th Cir. 1990). Prejudgment interest is awarded in property damage cases from the date the injured party was wronged. Fed. Ins. Co. v. Ferrellgas, Inc., 961 P.2d 511, 514 (Colo. Ct. App. 1997). However, prejudgement interest may not be awarded for future lost profits or earnings, Bennett v. Greeley Gas Co., 969 P.2d 754, 766 (Colo. Ct. App. 1998), nor for consequential damages until such damages are actually incurred, Pegasus Helicopters, Inc. v. United Techs. Corp., 35 F.3d 507, 513 (10th Cir. 1994). That said, we are mindful that section 5-12-102 is to be liberally construed to permit recovery of prejudgment interest. See Mesa Sand & Gravel, 776 P.2d at 365.

Accordingly, we must determine when the Homeowners were wronged in the context of this case given the theories of recovery–sale of a defective product, negligence, and negligent failure to warn. The Colorado Court of Appeals opinion in Coleman v. United Fire & Gas. Co., 767 P.2d 761 (Colo. Ct. App. 1988), although involving a breach of contract claim, is instructive here. In Coleman, the Colorado Court of Appeals addressed the accrual date of prejudgment interest where plaintiffs recovered against an insurer for a faulty roof replacement and subsequent repairs. Id. at 764. The substandard roof was originally installed in 1981 but did not show signs of leaking until 1983. Id. at 762-63. The plaintiffs made numerous repairs on the roof up to 1985 when they learned their replacement roof was inferior to their original roof. Id. at 763. For

-45-

the cost to replace the roof, the Colorado Court of Appeals affirmed the trial court's award of prejudgment interest from the date of the initial substandard roof replacement, not the date on which the problem manifested itself.  Id.  Like the plaintiffs in Coleman, the Homeowners sought repair and replacement costs to remedy a wrong, i.e., the installation of a defective product in their home. Prejudgment interest properly accrued, therefore, from the date of the wrong, the date when Entran II was installed in their homes.

Similarly, in Estate of Korf, we considered the appropriate accrual date in a case involving the plaintiffs' purchase of a defective product, a grain silo.  917 F.2d at 486.  Shortly after storing their first crop in the silo, the plaintiffs noted signs of serious spoilage in the silo-stored corn.  The plaintiffs successfully sued the silo manufacturer for benefit of the bargain damages and sought prejudgment interest from the date of purchase.  Id. at 482.  We held that "money was wrongfully withheld from [plaintiffs] on the date they were fraudulently induced to undertake the obligation for the defective silo."  Id. at 486.  Although the damages sought in Estate of Korf are different than in this case, our determination of when the wrong occurred is the same: the date the defective product was installed.

Goodyear counters by arguing "a tort plaintiff who obtains damages solely for  [] repair costs is entitled to prejudgment interest for those costs from the date

-46-

on which those costs were incurred." (Goodyear Op. Br. at 12). Goodyear supports this contention by drawing on In re Oil Spill by the Amoco Cadiz Off the Coast of France on March 16, 1978, 954 F.2d 1279, 1331 (7th Cir. 1992), where the Seventh Circuit addressed the issue of prejudgment interest under federal and British prejudgment interest law. The Seventh Circuit stated "[v]ictims who finance their own cleanup lend to themselves; forced to devote money to a project not of their own choosing (money they otherwise could have lent out at the market rate of interest), they are entitled to compensation for the 'hire' of this capital." Id. However, as the Homeowners accurately point out, the only issues on appeal in In re Oil Spill regarding prejudgment interest were the applicable interest rate and whether it was to be compounded, not the determination of the accrual date. Moreover, no matter the lure of the Seventh Circuit's discussion regarding prejudgment interest in In re Oil Spill, sitting in diversity, we recognize the supremacy of Colorado law on this issue, and we are bound to apply it regardless of our opinions as to the wisdom or fairness of that law.

Goodyear further argues that the Homeowners are not entitled to prejudgment interest from the date of installation because they did not, and could not, have a claim for repair costs then because such a claim would have been for future losses, citing Curragh Queensland Mining Ltd. v. Dresser Indus., Inc., 55

P.3d 235 (Colo. Ct. App. 2002). We think Curragh is distinguishable. In Curragh, the Colorado Court of Appeals addressed the issue of prejudgment interest in the context of a buyer's warranty claim for repairs. Id. at 242. The court noted that the buyer's claim for approximately $12 million in costs to correct the defects in a product (referred to by the court as "true fix" damages) included $3.4 million in lost future profits. Id. at 241. The court concluded, "because the jury's award of 'true fix' damages were based on the [b]uyer's anticipated, rather than past, *expenditures*, it could not be a basis for awarding prejudgment interest." Id. at 242 (emphasis supplied). The court remanded the case for an award of prejudgment interest on past repair costs, but not the "true fix" damages. Id.

In this case, we have no lost profits mixed in with the damage awards which represent compensation for past injury. That the Colorado Court of Appeals was concerned with the timing of the damages is evident by its citation to James v. Coors Brewing Co., 73 F. Supp. 2d 1250, 1257 (D. Colo. 1997). The court in Coors Brewing dealt with the issue of prejudgment interest in the context of an employee who was awarded lost wages, both past and future. The Coors Brewing court granted prejudgment interest on the amount of wages the employee lost before trial, but denied prejudgment interest for the portion of the jury award that represented future wages the employee would not earn. Id. at 1257-58. Here,

Homeowners sought damages to remedy their past, not future, injury arising from the defective product. Moreover, to the extent Curragh could be construed to support Goodyear's proposition, it is not in step with other Colorado cases. See, e.g., Coleman, 767 P.2d at 764; Ferrellgas, 961 P.2d at 514 (insurer, in a subrogation action, was entitled to prejudgement interest from the date house was destroyed by a gas explosion, not the date when the insurer paid the insured); Isbill Assocs., Inc. v. City & County of Denver, 666 P.2d 1117, 1122 (Colo. Ct. App. 1983) (owner of technical drawings was entitled to prejudgment interest from the date of a flooding accident which damaged the drawings, not from the date the drawings were replaced).

Goodyear also emphasizes that prejudgment interest accrues at different times for different types of damages. Relying on Pegasus Helicopters, Goodyear maintains that the repair and replacement costs incurred by the Homeowners are akin to consequential damages and thus prejudgment interest is not allowed until the Homeowners incurred these costs. While Goodyear properly points out that prejudgment interest accrues at different times for different types of damages, the damages the Homeowners sought here, i.e., the cost to repair and replace their defective Entran II hose, were not contingent upon an incident occurring in the future. Rather, they were the remedy to fix damages arising out of the installation of a defective product and the failure to warn, and the Homeowners had a right to

-49-

have the product repaired or replaced from the moment of installation.

Last, Goodyear's alternative argument that prejudgment interest could not accrue before the Homeowners' tort claims accrued for the purposes of the statute of limitations is unavailing. "The date when a claim accrues for statute of limitations purposes is independent from the date of the wrongful withholding for the purpose of awarding interest." Eads v. Dearing, 874 P.2d 474, 478 (Colo. Ct. App. 1993). And, although the dates may be the same, they need not be. Id.; Porter Const. Serv., Inc. v. Ehrhardt, Keefe, Steiner, & Hottman, P.C., — P.3d —, 2005 WL 2046223 *1 (Colo. Ct. App. 2005). Here, the wrongs giving rise to the Homeowners' damages occurred when the Entran II was installed in their respective homes, well before the statute of limitations began to run. Accordingly, because § 5-12-102 is to be liberally construed to permit the recovery of prejudgment interest, Mesa Sand & Gravel, 776 P.2d at 365, for the purposes of calculating prejudgment interest, we give effect to the date of the wrong, not the date when statute of limitation began to accrue.

We therefore hold that the district court did not err in awarding prejudgment interest from the time Entran II was installed in the Homeowners' respective homes. We remand, however, for a recalculation of prejudgment interest as to the Holzwarths and Sutterley/Kilgore.

VI. *Goodyear's Conditional Cross-Appeal*

-50-

Goodyear contends that the district court erred as a matter of law in instructing the jury on two alternate tests for determining product defect. Goodyear raised this issue by way of conditional cross-appeal, and asked this court to address this issue only if: (1) we reverse the jury's apportionment of fault to Heatway; or (2) we order a new trial on the claims of the Holzwarths, Sutterley/Kilgore, Mr. Gorog or Ms. Glas. (Goodyear Ans. Br. at 20).

Because we order a new trial only as to the claims of Mr. Gorog and Ms. Glas, we decline to reach this issue. We do not want to speculate on the appropriate jury instructions in the absence of a new trial record.

The amended judgment is AFFIRMED as to the Homeowners that recovered. It is REVERSED as to (1) the Holzwarths and Sutterley/Kilgore with instructions to reinstate the jury's verdict and to award prejudgment interest, and (2) Mr. Gorog and Ms. Glas with instructions to conduct a new trial on their claims.