**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SUSAN P. WILLIAMS,

        Plaintiff-Appellant,

  v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 05-1298
(D.C. No. 04-CV-2056-EWN)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

Plaintiff Susan P. Williams, proceeding pro se, appeals the district court's

order upholding the Commissioner's denial of her application for social security

disability benefits. She also appeals the district court's orders denying her

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

post-judgment motions. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

*Background*

Ms. Williams alleges disability since February 14, 2000, due to spinal arthritis, degenerative disc disease, fibromyalgia, hypoglycemia, carpal tunnel syndrome, peripheral neuropathy, headaches, temporomandibular joint syndrome, and tinnitus. R. Vol. II, at 135. An administrative law judge (ALJ) held a hearing at which Ms. Williams appeared pro se and testified. A vocational expert also testified as to the exertional and nonexertional requirements of Ms. Williams' past jobs as a paralegal, legal secretary, and secretary. The ALJ determined that Ms. Williams retained the residual functional capacity (RFC) to perform her past work as a secretary and a legal secretary. Accordingly, he denied benefits at step four of the five-part sequential evaluation process. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing five steps).

The Appeals Council denied her request for review, making the ALJ's decision issued on July 22, 2002, the final decision of the Commissioner. *See Jensen v. Barnhart*, 436 F.3d 1163, 1164 (10th Cir. 2005). The district court issued an exhaustive order addressing each of Ms. Williams' thirty claims,[1] and

---

[1]    We recognize that Ms. Williams maintains that the district court improperly recast her four issues as thirty separate claims, but she has not demonstrated that the district court erred in doing so.

affirmed the Commissioner's decision. Ms. Williams then sought reconsideration, relying on the new evidence provided in a March 23, 2005 report by Georgeanne Bley, Ph.D. After the district court denied that motion, Ms. Williams again sought reconsideration, which the district court also denied. Ms. Williams appeals.

*Legal Framework*

We review the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether she applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* We do not reweigh the evidence or retry the case, but we "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262.

In this context, "disability" requires both an "inability to engage in any substantial gainful activity" and "a physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted). The impairment must be a "'medically determinable physical or mental impairment which can be expected to result in death or which has

-3-

lasted or can be expected to last for a continuous period of not less than 12 months. . . .'" *Fischer-Ross*, 431 F.3d at 731 (quoting 42 U.S.C. § 423(d)(1)(A)).

On appeal, Ms. Williams argues (1) substantial evidence does not support the ALJ's decision, (2) the ALJ failed to develop the record, (3) the ALJ failed to explain the evidence he omitted from his decision, (4) the ALJ failed to follow the prescribed procedure to determine her RFC, and (5) the district court failed to consider new evidence obtained and submitted after the ALJ's decision.[2]

*Substantial Evidence*

We do not repeat here the contents of the medical records because the district court thoroughly reviewed them in its order. Moreover, Ms. Williams' appellate arguments can be addressed without reciting all of the medical evidence.

Ms. Williams asserts that the results of her medical tests do not support the ALJ's determination that she is not disabled within the meaning of the Social Security Act. She maintains that the ALJ erred in relying on the various physicians' reports of those tests, rather than conducting an independent review of the meanings and significance of medical terminology. *See, e.g.,* R. Vol. I, Doc. 25, at 11 ("Clearly, the ALJ selected documents containing laboratory findings that

---

[2]     Ms. Williams requested this court to accommodate her asserted difficulties with written and verbal communications by accepting her district court briefs as her appellate brief. By an order dated September 26, 2005, this court granted the request in part. Accordingly, we have considered those portions of Ms. Williams' district court briefs she incorporated by reference in her appellate briefs.

constituted substantial evidence, he just did not develop them, that is, examine them in detail for meaning, look up the terms if he needs to, and carefully think through the results.").

Just as an ALJ cannot substitute his own medical opinion for that of a treating physician, *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004), we conclude that the ALJ is not required to accept a claimant's lay opinion on the meaning or significance of medical tests.[3]  We turn to Ms. Williams' argument that substantial evidence does not support the ALJ's decision.

Ms. Williams claims that the ALJ failed to appreciate the changes in her C-spine MRI as shown by a comparison of her 1999 and November 14, 2000 films. She further contends that the ALJ and the district court failed to recognize the significance of MRIs administered on April 6, 2001 and December 24, 2001.  She maintains that these reports and the physicians' reports discussing them show that her back condition was worsening.

That Ms. Williams had back problems substantiated by medical evidence is

---

[3]     The district court also noted that Ms. Williams sought to rely on her own "medical opinion of why her disc disease is disabling."  R. Vol. I, Doc. 37, at 21; *see also id.* at 23 (rejecting Ms. Williams' attempt "to argue that her own medical opinions of the meaning of this MRI are more persuasive than Dr. Jatana's opinions of this MRI"); *id.* at 24 (holding ALJ properly relied on treating physician's well-supported opinion, especially when the contradictory evidence "is Plaintiff's own 'medical' opinions about her condition").  Ms. Williams has not argued on appeal that the district court erred in holding that her medical opinions cannot trump those of her physicians.

undisputed. However, none of the reports or records demonstrates that these problems were disabling. This is not to say that a claimant must provide a physician's opinion of disability. Indeed, such an opinion would not be binding on the Commissioner. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). Rather, to prove disability, a claimant "must furnish medical and other evidence of the existence of [a] disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).

Furthermore, the ALJ's decision not to repeat in his decision all of the language in the medical test reports does not direct a conclusion that his decision is unsupported by substantial evidence. To the contrary, the ALJ's decision demonstrates that he appropriately considered these reports. By arguing that the ALJ should have viewed the evidence differently, Ms. Williams asks this court "to reweigh the evidence; this we cannot do." *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992).

Ms. Williams also contends that the ALJ incorrectly evaluated her complaints of pain. The ALJ correctly recognized that he was required to evaluate Ms. Williams' pain because she had fulfilled her burden to "prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citations omitted). The ALJ

-6-

discounted her pain allegations, however, based on his finding that she was not fully credible.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F. 3d 1168, 1173 (10th Cir. 2005) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation omitted).

The ALJ discounted Ms. Williams' pain allegations for the following reasons: (1) her daily activities were not consistent with disabling pain, (2) her use of pain-relieving medication did not support her claim of disabling pain, (3) she stopped working because she was terminated, not because she was disabled, (4) she looked for work despite her claim that she was disabled, (5) her condition apparently had not deteriorated since she stopped working, (6) her description of her symptoms and limitations appearing throughout the record was "generally . . . so varied, specious, and inconsistent that it is unpersuasive," R. Vol. II, at 27, (7) she failed to follow recommended medical advice on several occasions, and (8) her physicians suggested that she may be exaggerating her symptoms. These credibility findings are closely and affirmatively linked to substantial evidence.

We have meticulously reviewed the record in this case, including

Ms. Williams' briefs filed in the district court. We have reviewed de novo the district court's thorough order. *See Fischer-Ross*, 431 F.3d at 731. For substantially the reasons stated in the district court's order and memorandum of decision, we conclude that substantial evidence in the record as a whole supports the ALJ's ruling.

*Failure to Develop the Record*

Ms. Williams next alleges that the ALJ failed in his duty to develop the record because he did not order a consultative evaluation on her neurological impairments or her upper-extremity limitations. She alleges that the record contains sufficient references to these impairments to trigger the ALJ's duty.

In a social security disability case, the claimant bears the burden to prove her disability. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Disability hearings are nonadversarial, however, and the ALJ has a duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* (quotation omitted). "This duty is especially strong in the case of an unrepresented claimant." *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins*, 113 F.3d at 1167

(citations omitted). If she does so, then the ALJ's duty to order a consultative examination arises. *Id.* "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.*

Ms. Williams argues that the evidence was sufficient to require a consultative examination relating to her neurological impairments. For objective medical evidence of these impairments, she relies on reports by Dr. Redosh. But Dr. Redosh did not diagnose any neurological impairments. Rather, discussing an MRI performed to rule out multiple sclerosis, he suggested that an explanation for a "focus of abnormal signal would be an old injury, such as a shear injury of the gray-white matter junction," or "a small old infarct or injury." R. Vol. II, at 318. Similarly, Dr. Redosh did not diagnose Ms. Williams with cerebellar syndrome; instead, he ordered tests to confirm or refute his initial impression that she "most likely" had this condition. *Id.* at 355. The record contains no other reference to cerebellar syndrome, indicating that the testing did not confirm Dr. Redosh's initial impression. Therefore, the record does not support Ms. Williams' claim that the record contains diagnoses of brain damage, nor do these brief, isolated references establish that she had a severe neurological impairment.

Ms. Williams also argues that her complaints of throat constriction should have alerted the ALJ that she had a brain injury. But no physician stated that a

brain injury caused Ms. Williams' throat constriction. To the contrary, Dr. Woodward stated that he "did not find any evidence of neurological dysfunction to account for [her throat symptoms]." *Id.* at 423. Nor did Dr. Redosh link Ms. Williams' symptoms of throat constriction to any neurological impairment; he described it as "globus hystericus." *Id.* at 346. Ms. Williams' own statements of her throat problems and her forgetfulness and difficulty in concentrating were also insufficient to alert the ALJ to develop the record as to her alleged neurological impairment.

Ms. Williams next contends that the ALJ was required to develop the record on her claim of upper-extremity restrictions. She testified that she experienced weakness, numbness, and tingling in both arms. *Id.* at 76-77. She had used special arm rests at her past jobs. *Id.* at 92-93. She maintains that the permanent restrictions on using her hands and arms Dr. Fry identified in 1993, *id.* at 232, triggered the ALJ's duty to develop the record. However, Ms. Williams continued to work as a legal secretary and paralegal for over six years after the permanent restrictions were imposed. Therefore, Dr. Fry's 1993 report was insufficient "to suggest a reasonable possibility that a severe impairment exist[ed]." *Hawkins*, 113 F.3d at 1167.

The objective medical evidence in the record is insufficient to indicate the presence of a severe neurological or upper-extremity impairment. Consequently, the

ALJ was not required to develop the record. *Cf. Carter*, 73 F.3d at 1021-22 (holding physician's diagnosis of depression required further development even though claimant's application did not mention depression).

*Failure to Explain Evidence Omitted from ALJ's Decision*

Ms. Williams contends that the ALJ failed to consider relevant evidence and failed to explain the evidence he omitted from his decision. She asserts that he failed to consider evidence relating to her cervical spine, neurological impairments, and permanent upper-extremity restrictions. In addition, she complains that the ALJ interrupted her at the hearing, thus preventing her from presenting her evidence.

"[W]hile [the ALJ] is not required to discuss every piece of evidence in the record, he 'must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.'" *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)).

Contrary to Ms. Williams' contentions, the ALJ's discussion of the medical evidence is legally sufficient. It demonstrates a meaningful analysis of the full medical record and Ms. Williams' testimony. In the decision, the ALJ recognized Ms. Williams' medically determinable conditions, particularly her history of spinal problems. In addition, the ALJ discussed the reports by Drs. Redosh, Donaldson, Hedberg, Wright, O'Brien, Woodward, Jatana, and Wieder. He further acknowledged Ms. Williams' complaints to various physicians. To the extent Ms. Williams argues that the ALJ should have independently interpreted the diagnostic tests instead of relying on the doctors' reports of those tests, we decline

to impose such a requirement. Moreover, the ALJ was not required to discuss every piece of evidence. Further, as discussed above, the ALJ was not required to accept Ms. Williams' lay opinion on the meaning or significance of the medical tests. Finally, the ALJ did not need to weigh conflicting medical evidence or to reject any "significantly probative evidence," *Clifton*, 79 F.3d at 1010. Accordingly, we find no reversible error in the ALJ's analysis.

We also find no merit to Ms. Williams' claim that the ALJ interrupted her during the hearing, thus preventing her from explaining her condition relating to her pain, physical therapy, and the effect on her injuries of working at a computer. *See* R. Vol. I, Doc. 25, at 32. The hearing transcript reveals that the ALJ did ask clarifying questions, but he did not restrict Ms. Williams' testimony. Any interruptions by the ALJ did not deprive Ms. Williams of a "fundamentally fair" hearing. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

*Procedure to Determine RFC*

Next, Ms. Williams argues that the ALJ did not follow the applicable legal standards to determine her RFC. The ALJ must complete the following three phases of the step four analysis:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At

-13-

each of these phases, the ALJ must make specific findings. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).

At phase one, the ALJ found that Ms. Williams retained the physical RFC to perform less than a full range of light work based, in part, on his determination that she had no upper-extremity restrictions. For the second phase, he incorporated the vocational expert's testimony about the demands of Ms. Williams' past work. This was sufficient to satisfy the requirement that the ALJ make specific findings. *See Doyal*, 331 F.3d at 761 (stating nothing improper in the ALJ's quoting the vocational expert's testimony to support his own findings at phases two and three). At phase three, the ALJ concluded that Ms. Williams could perform her past jobs as a legal secretary and secretary based on his determination of her RFC.

Ms. Williams challenges the ALJ's phase-one determination, taking issue with his finding that she has no upper-extremity restrictions. She maintains that the ALJ failed to consider her neck constriction, numbness, tremors, weakness, tingling, restricted range of motion, and neurological impairments. She relies on Dr. Fry's 1993 permanent restrictions on using her hands and arms. In addition, she asserts her pain precludes her from doing her past relevant work.

We decline to disturb the ALJ's RFC determination. The ALJ properly concluded that the permanent restrictions identified by Dr. Fry in 1993 did not

-14-

prevent Ms. Williams from doing her past work as a legal secretary and secretary. As noted above, she continued to work as a legal secretary and paralegal for six more years, despite those restrictions. This approach was reasonable, particularly because there is no objective medical evidence that her upper-extremity condition deteriorated since 1993. The ALJ also indicated that the other alleged impairments that Ms. Williams asserts prevents her from doing her past work were not supported by the medical evidence or by her daily activities. He also rejected her claims of disabling pain because he found her testimony on this point not fully credible. These findings are supported by substantial evidence.

Ms. Williams also contends that the ALJ erred in applying the "grid," 20 C.F.R. Part 404, Subpt. P, App. 2, but his decision makes clear that he did not. Therefore, we conclude that the ALJ's determination that Ms. Williams retained the RFC to perform her past work as a legal secretary and secretary is supported by substantial evidence in the record.

*New Evidence*

Ms. Williams asserts that new evidence, obtained and submitted after the ALJ's July 2002 decision, requires a remand to the agency. She relies primarily on a report by Georgeanne Bley, Ph.D., dated March 23, 2005, which describes Ms. Williams' psychological limitations. She has also submitted a September 9, 2003 report by Dr. Hammerberg finding "a right long thoracic neuropathy," and an

April 17, 2003 MRI by Dr. Solsberg. Attachs. to plaintiff's motion to correct omissions.[4]

Sentence six of 42 U.S.C. § 405(g) authorizes a district court to remand to the agency when "new and material evidence comes to light, and there is good cause for failing to incorporate such evidence in the earlier proceeding." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994). A remand is not appropriate in this case because the new evidence does not demonstrate that the findings relate back to the period on or before the date of the ALJ's decision. *Cf. Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (holding that Appeals Council must consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision") (quotation omitted). Moreover, Ms. Williams has not shown good cause for failing to present this evidence to the Commissioner. Accordingly, the district court did not abuse its discretion in denying Ms. Williams' Rule 59(e) motion to alter or amend the judgment to remand to the agency. *See Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1275 (10th Cir. 2005) (reviewing Rule 59(e) ruling for abuse of discretion).[5]

---

[4] Ms. Williams has abandoned her claim that a remand is warranted based on her June 2003 back surgery in Australia.

[5] Ms. Williams apparently has filed a new application for benefits based on the medical evidence obtained after the ALJ's decision. Under these

(continued...)

-16-

*Pending Motions*

Ms. Williams' motions to proceed on appeal in forma pauperis, and to correct omissions in the record are granted. Her motion to remand to the district court for further proceedings is denied. The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[5](...continued)
circumstances, a new application was the proper procedure for Ms. Williams to claim entitlement to benefits based on a deterioration in her condition. *See, e.g., Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) ("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application of benefits.").