**F I L E D**

PUBLISH

**June 15, 2005**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

EARL JOHNSON,

      Plaintiff-Appellee,

v.

ABLT TRUCKING CO., INC., and
TED TAMMEN, an individual,

      Defendants-Appellants.

No. 03-3052

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Case No. 1:01-1187-DWB)

---

Stephen M. Kerwick, (Jay F. Fowler, with him on the briefs) Foulston Siefkin,
LLP, Wichita, Kansas, for Defendants-Appellants.

Jack Tracy, Purcell, Oklahoma (Kathleen N. Wohlgemuth, Martin & Churchill,
Chtd., Wichita, Kansas, with him on the briefs) for Plaintiff-Appellee.

---

Before **McCONNELL, TYMKOVICH,** and **HOLLOWAY**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

The Seventh Amendment right to a jury trial does not permit entry of a

judgment when a jury's verdict is internally inconsistent. This can occur when, instead of rendering a single general verdict (such as "the defendant owes the plaintiff $100"), the jury renders a "special verdict" (written findings on each issue of fact) or a general verdict accompanied by answers to interrogatories. This Court has interpreted Rule 49 of the Federal Rules of Civil Procedure to require a contemporaneous objection if a party believes a general verdict with special interrogatories is internally inconsistent, but has not required such an objection in the case of a special verdict. In this case, defendants seek a new trial on the basis of an alleged inconsistency in the jury's verdict to which they did not object. The case thus raises two difficult questions: whether the jury's verdict was a special verdict or a general verdict with answers to interrogatories, and, if the former, whether the jury's verdict was irreconcilably inconsistent.

I.

This diversity appeal arises out of an automobile accident in which Plaintiff Earl Johnson suffered severe injuries. It is governed by Kansas law. Early in the morning of August 30, 1999, Mr. Tammen, an employee of ABLT, attempted to make a U-turn in his semi truck on Interstate 135 just north of Wichita, Kansas. Meanwhile, Mr. Johnson approached the scene from the south in his pickup truck, pulling a U-Haul trailer. Though Mr. Tammen's semi was blocking both northbound lanes, Mr. Johnson did not see the truck until it was too late. He

2

slammed into the side of the trailer at a speed of 45 to 50 miles per hour. Mr. Johnson was cushioned from the impact by an airbag, but the collision trapped him in his pickup truck with his feet pinned under the dash and the steering wheel pressing into his chest. After several minutes, Mr. Tammen began to pull away, dragging Mr. Johnson's pickup, with Mr. Johnson still inside, under the trailer. An eyewitness observed that sparks from the wreckage were igniting gasoline in the front of Mr. Johnson's pickup. He ran to Mr. Tammen's truck and asked for his fire extinguisher, but Mr. Tammen refused. The eyewitness and a volunteer fireman managed to extract Mr. Johnson from his pickup. By the time the fire department arrived, the pickup and the U-Haul trailer were engulfed in flames.

Mr. Johnson filed this lawsuit against Mr. Tammen and ABLT alleging negligence and negligence per se. The case was submitted to a jury, using the verdict form specified under Kansas law for cases involving comparative negligence. The verdict form read:

> We, the Jury, impaneled and sworn in the above entitled case, upon our oaths, do make the following answers to the questions propounded by the court:
>
> 1. Do you find any of the parties to be at fault?
>    Answer:    Yes _____    No _____
> Proceed to question 2 only if you answered "yes" to question 1.
>
> 2. Considering all the fault at 100%, what percentage of the fault is attributable to each of the following persons:
>    Earl Johnson        _____%
>    Ted Tammen        _____%

3

Total            100%
Proceed to the remaining question only if you found the fault
of Plaintiff Earl Johnson to be less than 50% of the total fault.

3.      Without considering the percentage of fault set forth in
question 2, what damages do you find were sustained by plaintiff?

| | | |
|---|---|---|
| a. | Noneconomic loss to date | $_____ |
| b. | Future noneconomic loss | $_____ |
| c. | Medical expenses to date | $_____ |
| d. | Economic loss to date | $_____ |
| e. | Future economic loss | $_____ |

Total                                  $_____

Memorandum and Order, Jan. 28, 2003, Aplt. App. Vol. III 791. The jury answered "yes" to the first question. On the second question it attributed 10% of the fault to Mr. Johnson and 90% to Mr. Tammen. On the third question, it found damages in the following amounts: (1) $39,482.46 in medical expenses to date; (2) $75,000 in economic loss to date; and (3) $325,000 in future economic loss.

After the jury returned its verdict, the court asked counsel whether there was any reason that the court should not enter judgment on the verdict. Neither party objected to the verdict. Judgment for Mr. Johnson in the amount of $395,482.46 was entered on the next business day.

On September 13, 2002, ABLT filed a motion for new trial, *see* Fed. R. Civ. P. 59(a), arguing that the jury returned a special verdict pursuant to Rule 49(a) and that the jury's answers to the special verdict were irreconcilably inconsistent. Specifically, ABLT argued that the jury's "award of substantial

4

medical expenses and lost wages is irreconcilably inconsistent with its finding of no pain, suffering, or disability." Motion for New Trial, Aplt. App. 769. The district court denied the motion for new trial, finding that the jury's answers to the special verdict were not irreconcilably inconsistent. ABLT appealed.

## II.

## A.

ABLT failed to object to the alleged inconsistency in the verdict before the jury was discharged. The first question is whether this constitutes waiver. Interpreting Rule 49(b) of the Federal Rules of Civil Procedure, this Court has held that a party waives the right to object to inconsistencies in a general verdict with special interrogatories if it does not object on that ground before the jury is discharged "unless the verdict is inconsistent on its face such that the entry of judgment upon the verdict is plain error." *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993). When the jury returns a special verdict, however, a party is not required to object to inconsistencies in the verdict before the jury is discharged in order to preserve the issue. *Id.*; *see also Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 851 (10th Cir. 2000) ("Although a party waives a claim of inconsistent verdicts based on a general jury verdict under Fed. R. Civ. P. 49(b), if not timely raised, this rule does not apply to special verdicts under Fed. R. Civ. P. 49(a)."); *Bonin v. Tour West, Inc.*, 896 F.2d 1260, 1263

5

(10th Cir. 1990).

In *Bonin v. Tour West*, we justified the no-waiver rule by reference to the text of Rule 49(a) which, unlike Rule 49(b), does not direct the court to resubmit an inconsistent verdict to the jury for further deliberation. Rule 49(b) provides specifically for the treatment of inconsistent general verdicts with special interrogatories:

> When the [special interrogatory] answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

Fed. R. Civ. P. 49(b). Rule 49(a) does not provide for resubmission to the jury. Based on the lack of specific direction in the rule, we concluded that the court lacked authority to resubmit a special verdict, and therefore the party was not required to object to the inconsistency before the court discharged the jury. *Bonin*, 896 F.2d at 1263.[1]

Whether ABLT's failure to object constitutes a waiver thus hinges on the

---

[1]The members of this panel believe that Rule 49 should be amended, or in an appropriate case our interpretation revised, to require parties to object to an inconsistent special verdict before the jury has been discharged. In this case we adhere, as we must, to circuit precedent.

6

characterization of the verdict as either a special verdict or a general verdict with answers to special interrogatories. The district court held that the verdict form submitted to the jury was a special verdict under Rule 49(a), noting that the verdict form was taken directly from the Kansas pattern jury instructions. *See* Memorandum and Order 1 n.1, Aplt. App. Vol. III 790 (citing Pattern Instructions Kansas 3rd, Civil § 181.04). Since the issue was not raised below, the district court did not consider whether characterization of the verdict form presented a question of state or federal law. This appeal does not require us to resolve the choice of law question either, because the jury's verdict is a special verdict under both state and federal law.

There is no question that the jury returned a special verdict under Kansas law. Kansas requires the use of a special verdict in personal injury cases involving comparative negligence. *See* Kan. Stat. Ann. § 60-258a(b). The district court's verdict form conforms closely to the pattern prescribed by the Kansas legislature. *See* Kan. Stat. Ann. § 60-249a. Because the verdict is tailored to the state's requirements for special verdict forms, the verdict qualifies as a special verdict under Kansas law.

The verdict is a special verdict under federal law as well. As Mr. Johnson correctly notes, the hallmark of a general verdict is that it requires the jury to announce the "ultimate legal result of each claim." *See Zhang v. Am. Gem.*

7

*Seafoods, Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003). Simply put, a general verdict "permits the jury to decide who wins." Aple. Supp. Br. 3. A special verdict, by contrast, presents the jury with specific questions of fact. After the jury returns its verdict, the court applies the law to the facts found by the jury and enters judgment accordingly. *See Zhang*, 339 F.3d at 1031. The verdict form in this case required the jury to answer specific questions of fact regarding fault and damages. The judgment itself required application of the law by the judge to the facts found by the jury. It is therefore a special verdict.

Mr. Johnson maintains that the verdict form, which asked, "Do you find any of the parties to be at fault?", required the jury to determine which party prevailed. Mr. Johnson maintains that the jury's affirmative response to this question was a finding that the defendants were at fault and that the plaintiff won. This is not an accurate characterization. The first question on the verdict form indicated an affirmative answer to the question "Do you find any of the parties to be at fault?" but it did not state which one. It turns out from the second question that the answer was both. Moreover, before the jury's allocation of fault between the parties—10% to Mr. Johnson, 90% to ABLT—could be translated into a judgment, the judge was required to apply the state's law limiting liability in cases of comparative negligence to those in which the defendant was more than 50% responsible, and multiplying the jury's finding of percentage responsibility

8

by the jury's finding of damages. The verdict thus did not announce the "ultimate legal result of each claim," and therefore was not a general verdict.

The cases cited by Mr. Johnson are easily distinguishable. In *Resolution Trust Corp. v. Stone*, a case involving several counts of RICO violations and securities fraud, the court issued a separate verdict form for each count asking whether the defendant was liable to the plaintiff or, on some counts, whether the defendant violated the relevant statute. 998 F.2d at 1546 n.11. The Court noted that statutory violation was not normally equivalent to liability, but in the context of the court's instructions and the verdict form, a finding of statutory violation established the defendant's liability and required the jury to determine damages. *Id.* at 1546–47. Because the jury's response to the first question on each verdict form established who prevailed on the relevant count, the verdict was a general verdict. *Id.* at 1547.

Our decision in *Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932 (10th Cir. 1994), draws the line even more clearly. The first part of the verdict form asked the jury whether "the plaintiffs . . . should recover on their contract claim against the defendant." *Id.* at 945. The Court determined that this question was plainly a general verdict, *id.* at 944, and subsequent questions regarding damages, bad faith, and the plaintiffs' violation of specific policy provisions, were special interrogatories. Unlike the verdict form at issue here, the verdict in

9

*Thompson* established that the plaintiffs should recover.

Similarly, in *Babcock v. General Motors Corp.*, 299 F.3d 60, 63 (1st Cir. 2002), the verdict form asked: (1) "Has plaintiff proved her negligence claim by a preponderance of the evidence?"; and (2) "Has plaintiff proved her product liability claim by a preponderance of the evidence?" Notwithstanding the verdict form's title—"SPECIAL VERDICT FORM"—the court held that it was a general verdict because the jury did not merely make findings of fact. *Id.* Rather, by determining whether the plaintiff proved her negligence and product liability claims, the jury entered conclusions of law and determined who prevailed on each count.

In this case, the verdict form asked only whether the jury found "any of the parties to be at fault." An affirmative answer to the question does not assign fault to either party. It could mean that the plaintiff, the defendants, or (as it turns out) both parties were responsible for the accident. The second interrogatory required the jury to assign a percentage of fault to each party. After the jury entered its finding of fact on the second question, the judge applied the controlling law of comparative negligence to determine whether the plaintiff prevailed. The jury's answers to the special verdict questions did not decide the winner of the case. The district court therefore properly characterized the jury's verdict as a special verdict.

10

B.

Because the verdict was special, ABLT's failure to object was not a waiver of its right to seek a new trial on the basis of the supposed inconsistency in the verdict. We must therefore determine whether the jury's verdict was inconsistent. This is not done lightly. In order to protect the jury's function, the courts must "reconcile the jury's findings, by exegesis if necessary, . . . before [they] are free to disregard the jury's special verdict and remand the case for a new trial." *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963) (internal citations omitted); *see also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."). If there is any plausible theory that supports the verdict, the reviewing court must affirm the judgment.

The reviewing court does not have the authority, however, to invade the province of the jury by disregarding factual findings. When the jury provides answers that are irreconcilably inconsistent, the court cannot enter judgment without choosing between the conflicting findings of fact and thereby overturning one of them. *See Finnegan v. Fountain*, 915 F.2d 817, 820 (2d Cir. 1990) ("The Seventh Amendment right to a jury trial precludes entry of a judgment based on an inconsistent jury verdict that thereby disregards any material jury finding.");

11

*Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946, 948 n.1 (5th Cir. 1982) (per curiam) ("The legal error resulting from the entry of a judgment based on inconsistent special interrogatories is one which undermines the validity and integrity of the judgment and may, in fact, run afoul of the Seventh Amendment by allowing the District Court to usurp the jury's function."), *cited in Bonin*, 896 F.2d at 1263.

To be irreconcilably inconsistent, the jury's answers must be "logically incompatible, thereby indicating that the jury was confused or abused its power." *Stone v. Chicago*, 738 F.2d 896, 899 (7th Cir. 1984). For example, a verdict that finds (1) no negligence by the defendant and (2) that the defendant's negligence caused the plaintiff's injuries, is facially inconsistent and cannot form the basis of a judgment. *See* Shaun P. Martin, *Rationalizing the Irrational: The Treatment of Untenable Federal Civil Jury Verdicts*, 28 Creighton L. Rev. 683, 715 (1995). A verdict is irreconcilably inconsistent only when "the essential controlling findings are in conflict, the jury has failed utterly to perform its function of determining the facts, and its verdict is a nullity." Abner Eddins Lipscomb, *Special Verdicts Under the Federal Rules*, 25 Wash. U. L.Q. 185, 212 (1940); *see also McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 157 (8th Cir. 1978) ("If [special verdict answers] are irreconcilably inconsistent, they destroy each other."). A jury's verdict may not be overturned merely because the reviewing

12

court finds the jury's resolution of different questions in the case difficult, though not impossible, to square. *See, e.g.*, *Stone v. Chicago*, 738 F.2d at 899 (finding no logical inconsistency in the jury's finding that officers were not negligent when they struck the plaintiff's bicycle and its finding that the officers attempted to cover up their involvement in the accident); *Schaafsma v. Morin Vermont Co.*, 802 F.2d 629, 634 (2d Cir. 1986) (holding that the jury's finding of mutual mistake regarding the amount of land sold was not irreconcilably inconsistent with its finding of fraud because other representations, such as its boundaries, road frontage, and fair value, might have been fraudulent).

ABLT argues that the jury's failure to award damages for future pain and suffering is irreconcilably inconsistent with its award of substantial future economic damages. ABLT maintains that the jury's award of zero damages for future pain and suffering amounts to a factual finding that Mr. Johnson will not suffer accident-related pain in the future. ABLT therefore argues that the jury's verdict is inconsistent on its face because a damage award for pain and suffering was a necessary premise of an award of damages for future economic loss.

ABLT's argument is not valid as a matter of logic or of substantive law. It is not metaphysically impossible for a plaintiff to incur future economic losses without corresponding non-economic losses such as pain and suffering or mental anguish. Neither is it inconsistent with Kansas law to recover damages for loss of

13

future earning capacity without an award of damages for pain and suffering, even when the loss of earning capacity is caused by pain.

Kansas has long held that if the plaintiff's injuries cause pain that prevents him from working, the appropriate damage award is an award for loss of earning capacity. In other words, compensation for the plaintiff's inability to work, when caused by accident-related pain, is not compensation for pain but for the loss of earning capacity. *McGranahan v. McGough*, 820 P.2d 403, 409 (Kan. 1991) (discussing the rule that pain and suffering is compensable under the workmen's compensation act as an economic loss if it "interferes with the ability to perform labor") (citing *Trowbridge v. Wilson & Co.*, 170 P. 816, 816 (Kan. 1918) ("Compensation for loss of wages or for loss of ability to earn wages, although that loss may be caused by pain, is not the same as damages for the pain.")).

ABLT argues that a factual finding of future pain must be reflected in an award of damages for future pain and suffering. In cases like the present one, however, the jury's finding of future pain may be reflected in an award of damages for future economic loss. This is consistent with the purpose of economic and noneconomic damages under Kansas law:

> Economic damages include the cost of medical care, past and future, and related benefits, i.e., lost wages, loss of earning capacity, and other such losses. Noneconomic losses include claims for pain and suffering, mental anguish, injury and disfigurement not affecting earning capacity, and losses which cannot be easily expressed in dollars and cents.

14

*Samsel v. Wheeler Transp. Servs.*, 789 P.2d 541, 552 (Kan. 1990), *overruled on other grounds*, *Bair v. Peck*, 811 P.2d 1176, 1181 (Kan. 1991). Injuries that affect earning capacity cause economic losses. Therefore, when accident-related pain manifests itself solely as an obstacle to the plaintiff's future employment, the injury is compensable through damages for loss of future earnings.

Contrary to ABLT's argument, the jury's failure to award *damages* for future pain and suffering does not imply a finding that Mr. Johnson would not *experience* pain in the future. In fact, under Kansas law, it would be more reasonable to interpret the jury's award of future economic damages based on lack of earning capacity as an implicit finding that Mr. Johnson *would* suffer accident-related pain in the future. For purposes of inconsistency under Rule 49(a), it is enough that Kansas law permits a finding of future pain to be reflected in an award of economic damages. The Seventh Amendment requires us to credit this theory and uphold the jury's verdict.

ABLT relies primarily on *Germann v. Blatchford*, 792 P.2d 1059 (Kan. 1990), a personal injury case based on injuries sustained in a car wreck. The jury returned a special verdict awarding past medical expenses and damages for loss of consortium but making no award for pain and suffering. The plaintiff moved for new trial based on the inadequacy of the jury's verdict. *Id.* at 1061. The Kansas Supreme Court held that the verdict was inadequate and that the plaintiff was

15

entitled to a new trial on damages.

ABLT maintains that *Germann* turned on the inconsistency of a special verdict. The court used the term "inconsistent," but ABLT's reading of *Germann* fails to consider the context of the Kansas Supreme Court's language, which included explicit statements contradicting ABLT's interpretation. *Germann* did not hold that the failure to award damages for pain and suffering was inherently inconsistent with an award of damages for past economic loss. The court held that the jury's failure to award damages for pain and suffering was inconsistent with the *evidence*, noting that "the evidence of her pain and suffering at the time of the accident and immediately thereafter . . . is essentially uncontroverted." *Id.* at 1062. It concluded that the jury's failure to award damages for pain and suffering "results in an inconsistent verdict which is *contrary to the instructions and the evidence*." *Id.* at 1064. The court expressly approved the lower court's "determination that the verdict was inadequate." *Id.* Because *Germann* addressed the inconsistency of the verdict with the evidence, as opposed to inherent inconsistencies in the verdict itself, it is inapposite to this appeal.

III.

We therefore hold that the jury's special verdict was not irreconcilably inconsistent under Rule 49(a). The order of the district court is AFFIRMED.

16