**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SILO ROMERO,

       Plainitff - Appellee/
       Cross-Appellant,

v.

HELMERICH & PAYNE
INTERNATIONAL DRILLING CO.,

       Defendant - Appellant/
       Cross-Appellee.

Nos. 17-1454 and 18-1018
(D.C. No. 1:15-CV-00720-NYW)
(D. Colo. )

## ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.

Silo Romero worked on an oil rig for Helmerich & Payne, and was fired after an extended dispute concerning workers' compensation. Romero sued H&P alleging the company either actually or constructively discharged him in retaliation for pursuing his workers' compensation claim. The district court

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

permitted Romero to advance his constructive discharge theory over H&P's objections. At trial, the jury found H&P both actually and constructively discharged Romero.

We AFFIRM. We hold the district court did not reversibly err in permitting Romero's constructive discharge theory to go to the jury. We also hold the district court correctly applied the wrongful withholding statute to calculate Romero's prejudgment interest.

## I. Background

In May 2009, Romero injured his forearm while working on an oil rig for H&P. He filed a workers' compensation claim in Colorado and received benefits, including full salary during recovery. In 2012, Romero still suffered arm pain from his injury and sought a second surgery. Workers' compensation covered medical costs, but H&P refused to pay wages during his convalescence because it considered the surgery elective. Romero then filed an administrative complaint seeking back wages for his period of recovery. The parties settled Romero's claim for back wages and he then returned to work.

The day after he returned to work, H&P fired him. Although witnesses provided conflicting testimony about some details, it is undisputed that Romero's supervisor called Romero into his office and informed him that he would receive a disciplinary write-up. Romero refused to sign the write-up because it was blank

and contained a termination section. The supervisor gave Romero a choice: sign or leave. Romero shook hands with everyone in the room, gathered his belongings, and left the work site.

Romero sued H&P for wrongful termination in violation of Colorado public policy, alleging H&P fired him in retaliation for filing a workers' compensation claim and administrative challenge. The complaint alleged H&P "discharged" or, alternatively, "constructively discharged" him.

At trial, Romero testified that H&P fired him from his job and that he did not resign or quit. Romero also asserted his alternative theory of "constructive (implied) discharge" and proposed, over H&P's objection, a jury instruction based on Colorado's Civil Jury Instruction 31:10.[1] H&P then proposed, over Romero's objection, a jury instruction based on the constructive discharge definition in

---

[1] The pattern jury instruction reads:

**31:10 Constructive (Implied) Discharge**
Even if the plaintiff resigned from (his) (her) employment, if you find that the words spoken or actions taken by the defendant would have led a reasonable person in the plaintiff's position to believe, and did lead the plaintiff to believe, that (he) (she) had been or was going to be discharged by the defendant, then the plaintiff was, in fact, discharged by the defendant.

Colo. Jury Instr., Civil 31:10 (Colo. Sup. Ct. Comm. on Civil Jury Instr. 2018).

Instruction 31:9,[2] arguing that even though a constructive discharge instruction should not be given, Instruction 31:9 should always accompany Instruction 31:10.

H&P moved for judgment as a matter of law, arguing constructive discharge requires evidence an employee resigned. The trial court denied the motion and ruled it would give the jury both H&P's 31:9 instruction and Romero's 31:10 instruction. The district court also approved a special verdict that read, in part:

> 3. Did defendant actually discharge the plaintiff because the plaintiff exercised his right as a worker to file a worker's compensation claim for loss wage benefits?
> ____ YES ____ NO
>
> IF YOUR ANSWER IS YES, YOU HAVE REACHED A VERDICT IN FAVOR OF PLAINTIFF. PLEASE PROCEED TO QUESTION 5 [to calculate Romero's economic and non-economic damages].
>
> IF YOUR ANSWER IS NO, PLEASE PROCEED TO QUESTION 4.

---

[2] The pattern jury instruction reads:

**31:9 Constructive Discharge—Defined.**
A constructive discharge occurs when an employer deliberately makes or allows an employee's working conditions to become so intolerable that the employee has no reasonable choice but to quit or resign and the employee does quit or resign because of those conditions. However, a constructive discharge does not occur unless a reasonable person would consider those working conditions to be intolerable.

Colo. Jury Instr., Civil 31:9 (Colo. Sup. Ct. Comm. on Civil Jury Instr. 2018).

4. Did defendant constructively discharge the plaintiff because the plaintiff exercised his right as a worker to file a worker's compensation claim for loss wage benefits?
_____ YES _____ NO

The jury answered Question 3 in the affirmative, but instead of skipping to Question 5 to calculate Romero's damages, it also answered Question 4 in the affirmative—despite the special verdict's direction to answer only one of the questions.

H&P moved for a new trial, arguing the jury reached an irreconcilably inconsistent verdict. The trial court determined the verdict was reconcilable because the jury did not make "contradictory findings." *Romero v. Helmerich & Payne Int'l Drilling Co.*, No 15-CV-00720-NYW, 2017 WL 5900361, at *11 (D. Colo. Nov. 30, 2017). The court therefore denied the motion.

H&P appealed the district court's denial of the motion for judgment as a matter of law, constructive discharge jury instruction, and denial of the motion for a new trial.

Romero cross-appealed the district court's calculation of damages because the court determined Colorado's wrongful withholding statute applies to prejudgment interest on Romero's economic damages, rather than the personal injury statute. Application of the personal injury statute would yield a higher interest payment to Romero.

## II. Analysis

We first consider H&P's arguments that the jury verdict should be reversed because the district court erred in instructing the jury on constructive discharge and that the error created sufficient jury confusion as to cast doubt on the verdict. We then consider the parties' competing theories of prejudgment interest.

### A. Trial Proceedings

H&P contends the jury should not have been instructed on Romero's alternative theory of constructive discharge because it was not supported by the evidence at trial. Although we partly agree with H&P, we find the district court's error harmless.

As a federal court sitting in diversity, we apply Colorado's substantive law on constructive discharge. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). We "look to the rulings of the highest state court" to guide our interpretation of state law. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). When the highest state court has not addressed the question, we predict how it would rule after giving "proper regard to relevant rulings of other courts of the State." *Id.* (internal quotation marks omitted). Pattern jury instructions may be helpful and persuasive if they accurately reflect applicable law but do not themselves have the force of law. *See, e.g.*, *Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, 853 F. Supp. 2d 1094, 1099 (D. Colo. 2012).

The Colorado Supreme Court requires two elements for a constructive discharge claim: (1) intolerable working conditions deliberately created by the employer, and (2) the employee's resignation as a result. "To prove a constructive discharge, a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign." *Boulder Valley Sch. Dist. R-2 v. Price*, 805 P.2d 1085, 1088 (Colo. 1991) (quoting *Wilson v. Bd. of Cty. Comm'rs*, 703 P.2d 1257, 1259 (Colo. 1985)), *overruled in part on other grounds by Cmty. Hosp. v. Fail*, 969 P.2d 667 (Colo. 1998). Intolerable conditions are those "a reasonable person under the same or similar circumstances would view . . . as intolerable, and not upon the subjective view of the individual employee." *Id.*[3]

In addition, "[c]onstructive discharge may occur without a formal firing, but the words or actions by the employer must 'logically lead a prudent person to believe his tenure had been terminated.'" *Id.* (quoting *Civil Rights Comm'n v. Colorado*, 488 P.2d 83, 86 (Colo. App. 1971)). In other words, an employer

---

[3] Colorado courts have pointed to examples of intolerable conditions such as discriminatory demotion or non-recommendation, *see Boulder Valley*, 805 P.2d at 1088, harassment or coercion, *see Christie v. San Miguel Cty. Sch. Dist. R-2(J)*, 759 P.2d 779 (Colo. App. 1988), or discriminatory reassignment and hostile ostracism, *see Gray Moving & Storage, Inc. v. Indus. Comm'n*, 560 P.2d 482, 483 (Colo. App. 1976).

cannot use the employee's resignation as a defense against a wrongful discharge claim (whether actual or constructive) when the employee reasonably believes he has been or will soon be terminated.

Recent cases from the Colorado Court of Appeals confirm this interpretation of *Boulder Valley*. *See Koinis v. Colo. Dep't of Pub. Safety*, 97 P.3d 193, 196 (Colo. App. 2003) (stating the two-element test); *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 202–03 (Colo. App. 2003) (referring to "the resignation element of a constructive discharge claim").

With this legal framework in mind, we address each of H&P's three grounds for reversal. None ultimately succeeds.

### 1. *Motion for Judgment as a Matter of Law*

H&P argues the district court reversibly erred when it denied H&P's motion for judgment as a matter of law, because resignation is an essential element of a constructive discharge claim and Romero testified unequivocally he did not resign. The district court declined to treat Romero's testimony as dispositive, denying H&P's motion because there was sufficient evidence Romero was forced to resign.

"We review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court." *Arnold Oil Properties LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1206 (10th Cir.

2012) (alteration omitted). "In conducting this review, the evidence and inferences therefrom must be construed most favorably to the nonmoving party." *Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1220 (10th Cir. 1998) (alteration and internal quotation marks omitted).

As we have explained, Colorado law requires the elements of intolerable working conditions *and* resignation. *Boulder Valley* uses mandatory language that "a plaintiff *must* present sufficient evidence establishing" both elements "[t]o prove a constructive discharge." 805 P.2d at 1088 (emphasis added). Without evidence of both of these elements, the jury should not have been instructed on a theory of constructive discharge.

Regardless of whether his working conditions satisfied the objective test of intolerability, Romero testified that he did not resign. Because whether Romero resigned is uniquely within his knowledge, the court should have accepted his testimony as true. *See Anderson-Prichard Oil Corp.*, 245 F.2d 831, 834 (10th Cir. 1957) ("[W]hen a party testifies to positive and definite facts which, if true, would defeat his right to recovery or fix liability upon him, he is bound by this testimony."); *see also Young v. Vincent*, 310 F.2d 709, 712 (10th Cir. 1962) ("[A]dditional evidence, when in conflict with plaintiff's own testimony, can neither weaken nor strengthen plaintiff's case.").

In light of these problems, Romero contends *Boulder Valley* contemplates a second kind of constructive discharge—one which occurs without a formal firing and leads the employee to believe his tenure has been terminated, but does not involve resignation or intolerable working conditions. But both *Boulder Valley* and *Civil Rights Commission* involved resignation and (arguably) intolerable working conditions, and thus shut the door on any alternative theory of constructive discharge. *See Boulder Valley*, 805 P.2d at 1087; *Civil Rights Comm'n*, 488 P.2d at 85–86.

Nevertheless, the district court's denial of judgment as a matter of law was harmless error. H&P did not articulate any prejudicial effect, either in its briefs or at oral argument, except insofar as the denial of its motion is entwined with H&P's other issues on appeal, which we address separately below. The jury unanimously found H&P actually discharged Romero as well as constructively discharged him. The jury's actual discharge finding independently supports the verdict and moots any alleged error concerning constructive discharge. *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1095 n.12 (10th Cir. 2007) (finding any error in the trial court's dismissal of plaintiffs' constructive discharge claims was harmless because the same factual allegations underlying them failed before the jury); *Roberts v. Wal-mart Stores, Inc.*, 7 F.3d 1256, 1259 (5th Cir. 1993) (Even if the district court "erred in denying their motion for

judgment as a matter of law" and "erred in permitting the comparative fault issue to go to the jury and in giving the instruction on comparative fault, the error was harmless" because it did not affect the jury's verdict.); *Saunders v. Pool Shipping Co.*, 235 F.2d 729, 730 (5th Cir. 1956) ("If it was error" to deny a Rule 50 motion, "the error on liability was harmless.").

In sum, construing the evidence and all inferences in the light most favorable to the nonmoving party, we conclude the district court's denial of H&P's motion for judgment as a matter of law was harmless error.

### 2. Jury Instruction

H&P next argues the district court erred in instructing the jury on constructive discharge. For similar reasons as discussed above, any instructional error was harmless.

"We read and evaluate the jury instructions in light of the entire record to determine if they fairly, adequately and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1154–55 (10th Cir. 2012) (internal quotation marks omitted). "We do not decide whether the instructions are flawless, but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues." *Id.* at 1155 (cleaned up).

"If we determine that the trial court erred, we must then determine whether the error was prejudicial." *Id.* "The judgment must be reversed if the jury might have based its verdict on the erroneously given instruction." *Id.* (cleaned up).

In the district court, H&P argued it did not terminate Romero. Romero, for his part, denied he had resigned. In any case, Romero argued, his encounter with the supervisor would have led a reasonable person to believe and actually did lead Romero to believe he had been fired. Romero's argument was supported by sufficient evidence and the court gave Instruction 31:10.

Instruction 31:10—like the *Civil Rights Commission* case from which it is derived—clarifies that an employer cannot use the lack of a formal firing as a defense against a wrongful discharge claim (actual or constructive) when the employee reasonably and actually believes he has been terminated. In such a case, the employee "was, in fact, discharged by the [employer]." Colo. Jury Instr., Civil 31:10 (Colo. Sup. Ct. Comm. on Civil Jury Instr. 2018). The instruction is designed to shield employees from precisely the Catch-22 argument H&P attempted below. Furthermore, Instruction 31:10 may be given "even if" the employee resigned, but is not limited to that circumstance. Thus, although Romero's testimony that he did not resign is dispositive of his constructive discharge claim, Instruction 31:10 remained appropriate as it pertained to his

actual discharge claim. Therefore the district court did not abuse its discretion by giving the instruction. *See Lederman*, 685 F.3d at 1154–55.

But even if H&P is correct that Instruction 31:10 can only be given when the employee asserts a viable constructive discharge claim, the jury could not have based its verdict on the erroneous instruction. As we explained above, this is because the jury found unanimously that H&P had actually discharged Romero independently of any constructive discharge instructions. The court's decision to instruct the jury on constructive discharge simply had no effect on the verdict. *See Emp'rs Liab. Assur. Corp. v. Freeman*, 229 F.2d 547, 551 (10th Cir. 1955) ("[T]he technical incorrectness in the particular instruction under consideration constituted harmless error which did not affect the final action of the jury in returning the verdict."). Nor does H&P suggest the jury gave Romero double recovery. "At worst, the jury answered yes to alternative theories of liability; either way defendants are liable." *Hall v. Mabe*, 336 S.E.2d 427, 429 (N.C. App. Ct. 1985). Thus, the jury verdict did not prejudice H&P.

### 3. *Motion for New Trial*

Finally, H&P argues the jury's findings were irreconcilable and the district court erred by not granting a new trial. Even if we accept some conflict between the two theories of liability, the jury's findings did not prejudice H&P.

To safeguard the jury's function, courts must "reconcile the jury's findings, by exegesis if necessary, before they are free to disregard the jury's special verdict and remand the case for a new trial. If there is any plausible theory that supports the verdict, the reviewing court must affirm the judgment." *Johnson v. Ablt Trucking Co.*, 412 F.3d 1138, 1143 (10th Cir. 2005) (cleaned up); *see also Domann*, 261 F.3d at 983 ("In determining whether there is any inconsistency, we must accept any reasonable explanation that reconciles the jury's verdict."). "To be irreconcilably inconsistent, the jury's answers must be logically incompatible, thereby indicating that the jury was confused or abused its power." *Johnson*, 412 F.3d at 1144 (internal quotation marks omitted).

The jury unanimously found both that Romero was actually discharged and that he was constructively discharged. H&P argues this verdict is "irreconcilably inconsistent" because the jury found Romero was terminated and simultaneously that he resigned—assuming *Boulder Valley*'s two-element test for constructive discharge.

We disagree. The jury could have concluded that actual discharge and constructive discharge, though different, overlap. For example, it is possible an employer could fire an employee and simultaneously lead a reasonable employee to believe he had been or was going to be discharged. And the jury could have concluded Romero reasonably believed he was about to be discharged when he

-14-

left the company. We therefore have no basis or need to speculate the jury lacked unanimity in its verdict. The district court correctly concluded that, even if the jury's special verdict is *legally* inconsistent with respect to the theories advanced at trial, the verdict is *logically* consistent in its determination Romero was discharged in violation of public policy.

Due to the jury's finding of actual discharge, its further finding of constructive discharge was unnecessary. *See Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991) ("[S]pecial findings issued in violation of the trial court's express instructions" are "surplusage, as a matter of law."); *Frey v. Alldata Corp.*, 895 F. Supp. 221, 224 (E.D. Wis. 1995) ("Some failures to follow the jury instructions differ from logically contradictory verdicts. . . . Failing to follow the court's instructions may create only superfluous information, not a logical contradiction.").

Because there are plausible interpretations that logically reconcile the jury verdict, the district court did not abuse its discretion in denying H&P's motion for a new trial.

### B. Prejudgment Interest

Romero cross-appeals regarding the calculation of prejudgment interest under Colorado law.

-15-

Two Colorado prejudgement interest statutes are at play. The first, Colorado's wrongful withholding statute, applies "[w]hen *money or property* has been wrongfully withheld." Colo. Rev. Stat. § 5-12-102(1)(a) (2018) (emphasis added). The second, Colorado's personal injury statute, applies "[i]n all actions brought to recover damages for *personal injuries* sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership." Colo. Rev. Stat. § 13-21-101(1) (2018) (emphasis added).

To interpret Colorado's substantive law, we once again turn to the Colorado Supreme Court. The court has explained that the wrongful withholding statute is "comprehensive in scope," *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo. 2008), and is designed "to compensate the plaintiff for the monetary losses sustained on wrongfully withheld money or property from the accrual of a claim for relief until entry of judgment," *Farmers Reservoir & Irr. Co. v. City of Golden*, 113 P.3d 119, 133 (Colo. 2005). In other words, the statute allows plaintiffs to recover where they "lost or [were] deprived of something to which [they were] otherwise entitled." *USAA v. Parker*, 200 P.3d 350, 353 n.3 (Colo. 2009) (quoting *Goodyear Tire*, 193 P.3d at 825).

The personal injury statute, by contrast, applies more narrowly "in tort actions for personal injuries." *Farmers*, 113 P.3d at 133. The Colorado Supreme

Court has emphasized that the statute "makes clear that its focus is upon the nature of the damages sought by the plaintiff, rather than the nature of the defendant's duty to pay those damages." *Parker*, 200 P.3d at 360.

Romero argues the tort of wrongful discharge in violation of public policy did not result in any injury to his real or personal property and it accordingly must result in a personal injury. He points to our decision in *David v. Sirius Computer Solutions, Inc.*, 779 F.3d 1209 (10th Cir. 2015), which considered whether damages flowing from a negligent misrepresentation fell under § 13-21-101(1). We found the statutory term "personal injury" means " any invasion of a personal right," *id.* at 1210 (alteration omitted) (quoting *Black's Law Dictionary* 802 (8th ed. 2004)). We went on to conclude "a tort which is not an injury to property is treated, by definition, as an injury to the person." *Id.* (cleaned up). Finally, we found that, although the Colorado Supreme Court had not "squarely addressed the issue," the personal injury statute could apply "to both economic and noneconomic damages when all the damages stemmed from a personal injury." *Id.* at 1211 (citing *Morris v. Goodwin*, 185 P.3d 777 (Colo. 2008)).

But Romero's reliance on *David* is misplaced. Our first duty is to apply the substantive law of the state as articulated by its highest court. *See Stickley*, 505 F.3d at 1077. The Colorado Supreme Court's decision in *Parker* directs us to focus on the *nature of the damages* sought by Romero. He sought as damages the

wages he would have earned from H&P and described his damages as economic

losses from lost wages resulting from his improper termination.[4] These damages

are focused on monetary injury—the loss of something to which Romero was

otherwise entitled—not the invasion of a personal right. The district court also

correctly observed that the tort of wrongful termination in violation of public

policy vindicates a public interest, not a personal impairment. Thus, Romero's

damages fall within the comprehensive scheme established by the wrongful

withholding statute.

Indeed, *David* supports our interpretation. There, the court addressed

negligent misrepresentation, a tort that caused the plaintiff reputational harm and

led to diminished earning capacity and lost business prospects. *See David*, 799

F.3d at 1210. Negligent misrepresentation under those circumstances causes

damages that are deeply personal, even if they are quantified in economic terms.

Thus, the personal injury statute can, in some circumstances, apply to economic

---

[4] As the district court correctly concluded, Romero is entitled to prejudgment interest only on the loss of past income. An at-will employee has no property interest in future wages, therefore such wages cannot be considered "something to which [the plaintiff] was otherwise entitled." Colorado courts have uniformly held that under the wrongful withholding statute, "interest may not be awarded on lost *future* wages and benefits." *Shannon v. Colo. Sch. of Mines*, 847 P.2d 210, 213 (Colo. App. 1992); *see also Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1207 (Colo App. 2009) (citing *Shannon* with approval); *Life Care Ctrs. of Am., Inc. v. E. Hampden Assocs. Ltd. P'ship*, 903 P.2d 1180, 1189 (Colo. App. 1995) (same).

damages under the *Parker* test.  By contrast, Romero's damages do not remedy

the invasion of a personal right; instead, they remedy a monetary injury stemming

from the violation of a public-policy rule.  Under *David*'s reasoning and the

*Parker* test, the wrongful withholding statute applies.

We therefore conclude the district court correctly applied the wrongful

withholding statute to the calculation of Romero's prejudgment interest.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court

on all issues presented.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge